(March 7, 1895.)

# RANKIN v. JAUMAN.

[39 Pac. 1111.]

COMPENSATION OF COUNTY COMMISSIONERS—ALLOWABLE ONLY WHEN ACTING AS A BOARD.—Under section 5 of an act entitled "Concerning fees and compensation of county officers," approved March 13, 1891, county commissioners are only entitled to the *per diem* and mileage therein allowed when acting as a board actually in session and transacting county business.

HOW AND WHEN BOARDS CAN ACT.—Boards of county commissioners are entireties, and can only act collectively and as empowered by law.

MEMBERS PERFORMING SERVICES INDIVIDUALLY MUST PRESENT HIS CLAIM AS ANY OTHER PERSON.—If a member of the board performs services for the county, whether by order of the board or on his own motion, he does so as an individual, and his claim for compensation must be presented in the same manner and take the same course as the claim of any other person.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Hawley & Puckett, for Appellant.

A board of commissioners must act in legal session. Its powers are in the board, not its members (*Paola etc. R. R. Co. v. Anderson County,* 16 Kan. 302), and can act only in accordance with the statute. (*Gorman v. County Commissioners,* 1 Idaho, 553.) No statutory provision can be set aside by any rule or custom of the board. (*People v. Brinkerhoff,* 68 N. Y. 259.) The only evidence of the intention of the board is drawn from the records. (*Phelan v. San Francisco,* 6 Cal. 531.) Records of a board are *prima facie* evidence of its proceedings. (*People v. Bercham,* 12 Cal. 50.) And its jurisdiction must appear from its records. (*Finch v. Board etc.,* 29 Cal. 454; *Swift v. Ormsby Co.,* 6 Nev. 97; *State v. Washoe Co.,* 5 Nev. 319.) A member of the board is not entitled to any compensation as commissioner except *per diem* and mileage. (*Andrews v. Pratt,* 44 Cal. 309; *Gibson's Case,* 1 Bland, 138, 17 Am. Dec. 257.) Section 7459 of the Revised Statutes, under which

we are proceeding, makes the charging and collecting of illegal fees for services rendered in an official capacity cause for a removal in a proceeding of this character. Section 1786 of the Revised Statutes of Idaho prescribes that claims against the county presented by members of the board must be verified as other claims and must state that the service has been actually rendered. Section 1773 of the Revised Statutes of Idaho prohibits the board from hearing or considering any claim in favor of any individual against the county unless the account is properly made out giving all items of the claim, duly verified as to its correctness, and that the amount is justly due. (*Christie v. Sonoma Co.*, 60 Cal. 164.) A right to additional compensation of county commissioners cannot be based on custom. (*Abright v. Bedford Co.*, 106 Pa. St. 582.) One acting in a fiduciary capacity cannot deal with himself in an individual capacity. (*Davis v. Rock Creek Co.*, 55 Cal. 359, 36 Am. Rep. 40; *Shakespeare v. Smith*, 77 Cal. 640, 11 Am. St. Rep. 327, 20 Pac. 294; *Graves v. Mining Co.*, 81 Cal. 320, 22 Pac. 665.) The right of an officer to compensation exists not by force of any contract but because the law attaches it to the office. (Mechem on Public Officers, 855; *Fitzsimmons v. Brooklyn*, 102 N. Y. 536, 55 Am. Rep. 835; *Stubenville v. Culp*, 38 Ohio St. 18, 43 Am. Rep. 417; *Gibson's Case*, 1 Bland, 138, 17 Am. Dec. 257.)

George Ainslie and W. E. Borah, for Respondent.

Parol evidence is admissible to vary the date of an instrument or record. (*Gateley v. Irvine*, 51 Cal. 172; *Gilson v. Gilson*, 51 Cal. 341; *Duncan v. Matney*, 29 Mo. 368, 77 Am. Dec. 575; *Carr v. State*, 5 Am. Crim. Rep. 438; *State v. Walker*, 5 Am. Crim. Rep. 465; *Ross v. Bank of Burlington*, 1 Aikens, 43, 15 Am. Dec. 664; *Coffin v. Bradbury*, 3 Idaho, 770, 35 Pac. 715; *Board of Education v. Keenon*, 55 Cal. 642.) Before an officer can be removed from office, under section 7459 of the statute, it must be shown that the fees were knowingly, willfully and corruptly taken, and that they were illegal. (*Triplet v. Munter*, 50 Cal. 644; *Smith v. Ling*, 68 Cal. 324, 9 Pac. 171; *Hays v. Stewart*, 8 Tex. 358; *Leeman v. State*,

35 Ark. 438, 37 Am. Rep. 44; *State v. Cannon,* 47 La. Ann. 278, 16 South. 666; *State v. Norris,* 111 N. C. 652, 16 S. E. 4; *State v. Prichard,* 107 N. C. 921, 12 S. E. 50.) As to the regularity of the presentation of these bills, the mere fact that they were irregularly presented would not make the fees. illegal if the services had been rendered. The real controversies in this matter have been such controversies as could have been properly presented only upon an appeal from the allowance. The real question at issue, the willful charging of illegal fees, has been lost sight of, and the questions discussed have been largely those relating to the itemization of the bills and the form and manner of their presentation. (*Board of Commrs. v. Leonard,* 3 Colo. App. 576, 34 Pac. 583; *Roberts v. People,* 9 Colo. 458, 13 Pac. 630.)

HUSTON, J.—This action was brought under section 7459 of the Revised Statutes of Idaho, which is as follows:

"Sec. 7459. When an information in writing, verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the information was presented, and on that day or some other subsequent day, not more than twenty days from that on which the information was presented, must proceed to hear, in a summary manner, the information and evidence offered in support of the same, and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained, the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for $500 in favor of the informer and such costs as are allowed in civil cases."

Upon a demurrer to the information, the district court held that the statute was unconstitutional. On appeal to this court from said decision of the district court, the judgment of the

district court was reversed, and the cause remanded for a trial. (*Rankin v. Jauman,* ante, p. 53, 36 Pac. 502.) Upon a trial before the court without a jury, judgment of nonsuit was entered upon motion of defendant, and from that judgment this appeal is taken.

The case is before us on a bill of exceptions, from which, and the evidence therein contained, the following facts appear: At the regular biennial election of 1892 the defendant was elected a member of the board of county commissioners for Ada county from district No. 1. He qualified as such officer on the second day of January, 1893. At that time the following laws were in force, relative to the duties and compensation of county commissioners: The compensation of the members of the board of county commissioners, as fixed by section 5 of an act of the first session of the legislature of the state of Idaho, was as follows: "County commissioners of each county shall receive the sum of six dollars for each day actually engaged in transacting county business, and twenty cents per mile for each mile necessarily traveled in transacting county business." (Laws 1891, p. 179.) Now, this section of the statute would seem to be, and perhaps is, somewhat loosely drawn, and, unless construed in the light of recognized legal principles, would give a degree of latitude in application which would, in the intellectual analysis of a mind bent solely upon personal ends, be little conducive to the interests generally supposed to be a controlling consideration in all legislation of a general character, to wit, the public welfare. But we are compelled to conclude that in the enactment of this statute the legislature did not intend to enact a law wholly in the interest of those who might, for the time being, become the incumbents of the office, wholly and entirely ignoring the higher interests of the people. It is the duty of courts, in construing legislative enactments, to so construe them as to carry out the real intention of the legislature. All laws in relation to the same subject matter must be construed *in pari materia.* As above stated, the respondent, having been duly elected and having qualified as a member of the board of county commissioners for Ada county for district No. 1 of said county, made his first appearance on the second day of January,

1893, as a member of said board, and was duly elected chairman of said board. Section 1755 of the Revised Statutes, provides that the regular meetings of the boards of commissioners must be held on the second Mondays of January, April, July, and October of each year. As appears by the record of the board, they met in special session on the second day of January, 1893, were in session two days. The regular session opened on the 9th of January, and were in session nine days. A special session was held on the 7th of February, and held for two days. A special session was held on April 1st for one day, making in the aggregate fourteen days from the time respondent took office until the first day of the regular April session. On the sixteenth day of January, 1893, respondent filed the following bill, which was duly allowed by said board, the respondent acting as chairman of said board, to wit:

"Ada County, State of Idaho, to William Jauman, Dr.

To 14 days as Co. Com., at $6.00................ $84.00
To 50 miles travel, at 40c..................... 20.00

$104.00"

Said bill is attested as follows:

"State of Idaho, ⎫ ss.
County of Ada. ⎭

"William Jauman, being duly sworn, says that the above account is correct; that . . . . as stated.

(Signed)    "W. JAUMAN.

"Subscribed and sworn to," etc.

And on the tenth day of April, 1893, the respondent presented the following bill, which was duly allowed by said board, respondent acting as chairman, to wit:

"Ada County, State of Idaho, to William Jauman, Dr.

To 82 days' services as Co. Com., at $6.00........$492.00
To 380 miles travel, at 40c.................... 152.00

$644.00"

—duly subscribed and sworn to.

From the second day of January, 1893, to the tenth day of April, 1893, is, inclusive of Sundays and holidays, ninety-eight days. Deducting therefrom the occurring holidays, to wit, fourteen Sundays, and the 22d of February, a holiday by our statutes, we have eighty-two working days; and the record of the board shows that during that period the board was in session only fourteen days. The respondent was elected a commissioner from the first district of Ada county, and, by the provisions of law, must have been a resident of the district for which he was elected. Now, giving him the very limits of his district from which to charge mileage, he could not be more than one mile from the place of holding the session of the board of county commissioners for Ada county; and yet we find in the bills presented by the respondent, above referred to, a charge of four hundred and thirty miles travel for the session of the board held for fourteen days. Certainly, this shows an exhibition of virile activity, which, while doubtless a subject of admiring wonder when displayed by a "sprinter," is devoid of much of its attractiveness when viewed or considered from the standpoint of a poor and overburdened taxpayer. But this marvelous exhibition of patriotic pedestrianism is given a deeper hue by the argument of counsel for the respondent. It is contended in explanation of this charge that the bills were made out by the clerk of the board at the request of respondent, and the said clerk states in a somewhat perfunctory manner that, "for the convenience of the commissioner," he divided the number of miles traveled, and doubled the rate allowed by the statute. If this contention is accepted, the number of miles actually traveled by respondent, in attending that one session of the board, was eight hundred and sixty miles, and he resided less than one mile from the courthouse. There were good sprinters in the Olympic races, but their powers of locomotion fade into insignificance by the side of this wonderful exhibition. It will hardly be seriously contended, we apprehend, that mileage is chargeable for every day the board is in session; but, even if this were so, the respondent must have traveled a little over sixty-one miles each day the board was in session. "O, wonder-

ful, wonderful, and most wonderful, wonderful; and yet again wonderful; and, after that, out of all whooping."

But it is claimed by counsel for the respondent that if the services were actually rendered, a mere irregularity in the account will not be construed into a corrupt extortion. The baord of county commissioners are an entirety; they can only act collectively, and as empowered by law. They are only engaged in "transacting county business," as that term is used in section 5 of the act of 1891, when acting as a board; and it is only while so acting that they can legally charge either *per diem* or mileage. It needs no authority to support this proposition. Should the board see fit to employ one of its members to perform certain services for the county, permissible by law to be performed by such officer, such member would act, not as a member of the board of county commissioners, but as an individual, and must present his claim for such services, and is subject to the same rules as any other individual presenting a claim against the county.

Section 1773 of the Revised Statutes is as follows:

"Sec. 1773. The board of commissioners must not hear or consider any claim in favor of an individual against the county unless an account properly made out, giving all items of the claim, duly verified as to its correctness, and that the amount claimed is justly due, is presented to the board within a year after the last item of the account accrued."

Section 1786 is as follows:

"Sec. 1786. All claims against the county presented by members of the board of commissioners for *per diem* and mileage, or other services rendered by them, must be verified as other claims, and must state that the service has been actually rendered."

It is contended by respondent that the presumptions are that an official has done his duty, and that it is incumbent upon the party prosecuting the information in this case to show, not only that the respondent has taken illegal fees, but that he has done so knowingly and with a corrupt intent. As the statement of a legal proposition, this is undoubtedly correct, and its

recognition involves the inquiry, Does the evidence in this case establish such a conclusion? Let us examine the evidence. The respondent presents a bill to the board for *per diem* allowance for ninety-six days, while the board were only in session for fourteen days, and the period covered only contained ninety-eight days, including fifteen holidays. Said bills also contain charges for mileage which would involve the traveling by the respondent of something over sixty-one miles per day during each day the board was in session, and the residence of respondent was about half a mile or less from the place of meeting of the board; and in these bills respondent makes a charge of forty cents per mile for travel, while the statute fixes the mileage at twenty cents per mile. The attempted explanation of this charge by the clerk of the board is too ridiculous to be entitled to consideration. These bills were sworn to by respondent, were presented by him to the board, were passed upon and allowed by the board, of which he acted as chairman; and yet, in the face of these facts—all matters of record—we are asked to conclude that there was neither knowledge nor corrupt intent on the part of the respondent. Credulity is not esteemed a paramount virtue of the judicial mind, but surely the recognition of such a flimsy excuse—for it does not rise to the dignity of a defense—as is offered in this case must involve something more than mere credulity. Officers are supposed to know the law under which they act. The maxim *"Ignorantia legis neminem excusat"* is forcefully applicable in their case. In this whole business there seems to have been a complete ignoring, not only of the provisions of the statute, but of all rules of law and principles of common honesty; and the attempt to explain or excuse it only results in accentuating its venality, and in this cause all of the members of the board seem to have participated. As instance, J. A. Beale was sworn as a member of the board on February 27, 1893. On the tenth day of April, 1893, the board having been in session but two days since he qualified as a member, Mr. Beale presents a bill duly sworn to for forty days' services as county commissioner, at six dollars per day, and one hundred and forty-five miles

travel, at forty cents per mile. Such an exhibition of zeal
on the part of public officers is seldom seen in this degenerate
age. They preyed (upon the county treasury) without ceas-
ing. Mr. Beale resided about one-fourth of a mile from the
place where the board met; and the accounts of the other com-
missioner, Wilterding, seem to have been ·constructed, presented,
and allowed upon the same lines. Between the date when ·
Commissioner Beale took office and the date of his first bill
there were forty-one days, including Sundays, and he only
charges for forty days; doubtless consoling his conscience by
the reflection of Lord Clive: "When I think of my opportuni- .
ties, I am astonished at my moderation."

In the face of this record, we are earnestly and eloquently
urged to affirm the finding of the district court that there was
no proof sustaining the information. The *per diem* allowed
by the statute to members of the board of county commissioners
is only chargeable for the time the board is actually in session.
County commissioners can only act, or claim compensation as
such while acting, as a board. The law does not contemplate
that members of the board may perform services for the county
as individuals, and then charge for it as commissioners. The
viciousness of such a course is too apparent to require comment.

The judgment of the district court is reversed, and the cause
remanded, with directions for further proceedings in accordance
with this opinion.

Morgan, C. J., and Sullivan, J., concur.