Points decided.

(June 21, 1900.)

## MILLER v. SMITH.

[61 Pac. 824.]

APPEAL FROM JUDGMENT REMOVING COUNTY OFFICER.—Under our constitution and statutes an appeal will lie from the judgment of a district court removing a county officer.

COUNTY COMMISSIONER—MEMBERS OF BOARD.—Individual members of the board of county commissioners cannot perform services for the county, and charge for them as commissioners.

BOARDS ACT COLLECTIVELY.—Boards of commissioners are entireties, and can only act as empowered by law, and collectively.

SAME.—The board is given certain limited powers, and a single member of such board is not empowered to act alone and bind the county in any manner.

SAME.—Members of the board cannot perform duties of road overseer and draw pay therefor as commissioners.

IGNORANCE OF THE LAW.—The plea of ignorance of the law will not protect a member of the board from removal from office, when it is shown that he has repeatedly violated the plain provisions of the law.

POWER OF BOARDS.—Boards of county commissioners are given a general supervisory power over county affairs, but they cannot, as a board or as individual members thereof, perform the duties imposed by law on any other county officer, and draw compensation as county commissioner therefor.

SAME—APPROPRIATION TO BE USED BY ONE MEMBER.—Board of county commissioners has no authority to appropriate money for repairing and constructing roads and bridges, and place the same at the disposal of a member of such board, and authorize him to superintend the construction of such work, and allow him compensation as a commissioner for so doing.

DUTY OF COUNTY ATTORNEY.—A county attorney may be removed from office under the provisions of section 7459 of the Revised Statutes for incompetency or a neglect to perform the duties imposed on him by law. Courts will not tolerate any connivance or collusion between the county attorney and the board for the unlawful appropriation of county funds.

APPROVAL OF OFFICIAL BONDS.—The board is prohibited from approving official bonds unless the sureties possess the qualifications prescribed by section 396 of the Revised Statutes.

Argument for Appellant.

ALLEGATION OF INFORMATION.—When a member of the board is charged
with violation or neglect of duty in the approval of official bonds,
the allegation that he acted with the board in the approval of such
bonds should be clear and specific.

PUBLICATION OF PROCEEDINGS.—The law requires the publication of the
proceedings of the board in but one newspaper in the county.

PROOF OF INTENT.—Frequent violations of the plain provisions of the
law are probative  facts, from which the ultimate fact of fraud-
ulent, willful, or corrupt intent, may be drawn.

FINDINGS OF FACT—CONCLUSION OF LAW.—Findings of fact and con-
clusions of law should be separately stated, but when the material
issues are passed upon it is not cause for reversal that an ultimate
fact is placed with the conclusions of law, as it is difficult many
times to distinguish between an ultimate fact and a conclusion of
law.

(Syllabus by the court.)

APPEAL from District Court, Fremont County.

Dietrich, Chalmers & Stevens, for Appellant.

The paramount object of such statutes as section 7459 of the
Revised Statutes of Idaho is the removal from office of incum-
bents who knowingly, willfully and corruptly use their official
position as a medium for extortion and wrong. (*Smith v.
Ling,* 68 Cal. 324, 9 Pac. 171; *People v. Nichols,* 79 N. Y.
588; *Gorman v. County Commrs.,* 1 Idaho, 559.)  It is indis-
pensable that the informer prove not only that the defendant
had done the acts complained of, but that he had done them
knowingly, willfully and corruptly. (*Triplett v. Munter,* 50
Cal. 644; *Smith v. Ling,* 68 Cal. 324, 9 Pac. 172; *Rankin v.
Jauman,* 4 Idaho, 394, 39 Pac. 1111, 1113.)  So far as shown
by the record, the acts complained of operated for the benefit
and not to the injury of the public. (*Osborn v. Ravenscraft,*
5 Idaho, 612, 51 Pac. 618.)  Conclusions of law are everywhere
commingled with findings of fact in apparent defiance of the
plain and imperative provisions of the law. (Idaho Rev. Stats.,
sec. 4407; 3 Estee's Pleadings, 4th ed., sec. 4655, and citations.)
The findings of fact do not cover all the issues and are therefore
insufficient to support the decision of the court or the judgment
herein. (*Wilson v. Wilson,* 6 Idaho, 597, 57 Pac. 708.)  The

board of county commissioners "has a reasonable discretion in the administration of county affairs and in the allowance of claims for services performed for the county by a county officer, for which no specified fees are allowed by law. (*Board of Commrs. v. Leonard*, 3 Colo. App. 576, 34 Pac. 583; Idaho Rev. Stats., sec. 1759, subds. 4, 22.)

Hawley, Puckett & Hawley, J. A. Bagley and P. Averitt, for Respondent.

Appellant seemingly in his answer fails to distinguish between the general supervisory power of the board of county commissioners over county matters, and their right to actually perform the duties of a particular officer. If the decision in *Rankin v. Jauman* is correct we must have judgment affirmed in this cause also, as the same reasons tenfold intensified apply here that did there.

SULLIVAN, J.—This action was commenced by the respondent, who is a citizen and taxpayer of Fremont county, against the appellant, who is a member of the board of county commissioners of said county, demanding his removal from said office, under the provisions of section 7459 of the Revised Statutes, and to recover the statutory penalty of $500 therein provided for. The information or complaint accuses the appellant of charging and collecting illegal fees for services rendered in his office, and knowingly, willfully and corruptly approving official bonds given by certain county officers, and of doing other acts in his official capacity in violation of law. It contains upward of sixty specifications of official misconduct. The answer admits some of the specifications of the information, and denies others. The trial was by the court, which made its findings of fact and conclusions of law in writing, and entered judgment against appellant, removing him from his said office, and in favor of the respondent for the statutory penalty of $500 and costs of suit. The appeal is from the judgment.

A motion to dismiss this appeal was made by respondent on the ground that the judgment in this proceeding was final, and

no appeal would lie therefrom. Section 9, article 5, of the constitution of Idaho is as follows: "The supreme court shall have jurisdiction to review, upon appeal, any decision of the district courts or the judges thereof. The supreme court shall also have original jurisdiction to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus,* and all writs necessary or proper to the complete exercise of its appellate jurisdiction." This section and our statutes of appeal clearly authorize an appeal from the judgment in a proceeding to remove an officer, and the appeal herein is authorized.

Section 7459 of the Revised Statutes, under which this proceeding is brought, is as follows: "When an information in writing, verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the information was presented, and on that day or some other subsequent day, not more than twenty days from that on which the information was presented, must proceed to hear, in a summary manner, the information and evidence offered in support of the same, and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for $500 in favor of the informer and such costs as are allowed in civil cases." By the information or complaint filed, the defendant is accused of charging and collecting illegal fees for services rendered by him, and is also accused of refusing and neglecting to perform official duties pertaining to his office as county commissioner. The illegal fees are alleged to have been charged and collected for services in receiving a bridge, for furnishing stray brands, for blacksmith work, and for presenting and having allowed by the board the following claims, among others, to wit:

St. Anthony, Idaho, July 19, 1899.

Fremont County, Idaho, to James Smith, Commissioner Dr.

| | |
|---|---|
| April 18 and 19, Receiving bridges at Rudy, by order of chairman, two days, at $6...................... | $12 00 |
| May 22.  To Edmunds road district to order bridges placed across canals, one day, $6................ | 6 00 |
| May 29.  Trip to Market Lake to order repairs on roads and bridges, 4 days, at $6..................... | 24 00 |
| Expenses horse feed at Rexburg...............$  50 | |
| Expenses horse feed at Market Lake............ 3 00 | |
| Expenses horse feed at Rexburg...............  50 | |
| —— | 4 00 |
| June 27.  To Texas Slough Bridge to have bridge repaired, one day......................... | 6 00 |
| Horse feed......................................... | 50 |
| | $52 50 |

Also, the following claim, it is alleged, was presented and allowed.

Fremont County, Idaho, to James Smith, Commissioner, Dr.

| | |
|---|---|
| To services rendered in connection with the breaking down of South Fork Bridge, by order of the chairman of board, Oct. 2, 3, 4, 5, 6, 7, 9 (seven days at $6)........................................ | $42 00 |

The following is an item from another bill presented by and allowed to the defendant:

| | |
|---|---|
| To repairs on road from Lodi to Island Park, as per instructions from board, July 29th, 31st, Aug. 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th (11 days at $6.00)..$66 00 | |

We quote the above as samples of bills presented by the defendant Smith, as county commissioner, and allowed by the board of which he was a member.

The defendant testified in his own behalf that his belief and understanding were that it was his duty, as county commissioner, to take care of all roads and bridges, where it was absolutely necessary and that he should get therefor six dollars per day. This court held in *Rankin v. Jauman,* 4 Idaho, 394, 39 Pac. 1111, as follows: "The *per diem* allowed by the statute to members of the board of county commissioners is only chargeable for the time the board is actually in session. The law does not contemplate that members of the board may perform services for the county as individuals, and then charge for it as commissioners. The viciousness of such a course is too apparent to require comment." It is also there held that boards of county commissioners are entireties, and can only act collectively and as empowered. The law does not authorize a member of the board to act for the board, nor has it given a single member of the board, when acting alone, any authority whatever. It is shown that some of the road districts in Fremont county did not have road overseers, and it is shown that the board employed a competent bridge man at five dollars per day, and the record shows that the board of commissioners fixed the compensation of road overseers at two dollars and fifty cents per day. If county commissioners were permitted to usurp the office of road overseer, and perform the duties of such officer, and pay themselves six dollars per day and expenses therefor, road work would cost the taxpayers much more than was contemplated by the law making power; and county commissioners cannot shield their unlawful acts under the plea of ignorance of the law, for, if that would relieve them of persistent and many times repeated unlawful acts, it would be impossible to remove an unfaithful or incompetent officer from office. For it is a well-recognized fact that an officer who persistently and repeatedly violates his official duties will, when called to account, attempt to give very plausible reasons for such violations of the law. County commissioners are provided by law with a legal adviser, in the county attorney, and are expected to keep within the law,

especially in matters already passed upon by the courts. In the case of *Rankin v. Jauman*, 4 Idaho, 394, 39 Pac. 1111—a case quite similar to the one at bar—the court held that the compensation of county commissioners was fixed by law at six dollars per day, and that commissioners could not act except as a board, as an entirety. That was a case where the commissioner attempted to perform the duties of road overseer, and charged the county six dollars therefor, and pleaded ignorance of the law. This court in that case said: "Officers are supposed to know the law under which they act. The maxim, '*Ignorantia legis neminem excusat*,' is forcefully applicable in their cases." While boards of county commissioners are given general supervisory power over county affairs, they cannot, as boards or as individual commissioners, perform the duties of any other particular officer, and recover their six dollars *per diem* therefor.

On the recommendation of the defendant as commissioner, the board of which he was a member made an appropriation of $400, placed it in the hands of the defendant, and authorized him to build a road between St. Anthony and Island Park, or to superintend the construction of it, which he did and charged therefor at the rate of six dollars per day, whereas, if said board had appointed a competent road overseer for that purpose, they would have saved the county three dollars and fifty cents per day, as the salary of road overseer was fixed at two dollars and fifty cents per day. The record also shows that each of the other county commissioners was given an appropriation of several hundred dollars, and authorized to expend the same on road work in their commissioners' district. Defendant testified that the question of the regularity and legality of performing the road work in that manner was submitted by the board to the county attorney, and that he informed them that he thought they had a right to do it in that way. No record was made on the minutes of the board of a submission of said matter to the county attorney, nor of

his advice thereon. Courts will not countenance any connivance or collusion between the county attorney and the board for the appropriation of county funds.

There was an attempt on the part of the appellant to show that the county attorney advised the board that the official bonds of county officers were passed upon by the county attorney, and that the board approved the bonds under the advice of the county attorney. The record, we think, fairly shows that the form of the bond was passed upon by the county attorney, and not the sufficiency of the sureties; and it is not the form of the bond that is attacked, but the sufficiency of the sureties; under that provision of the statute which declares as follows: "No person shall be accepted as surety on such bond except he shall, during the year immediately preceding, have been assessed and paid taxes, in his own right, upon property to the amount for which he has become surety." (See Rev. Stats., sec. 396.) The court found as a fact that the defendant and the other members of the board of county commissioners at their session in January, 1899, approved a large number of official bonds, the sureties on which had not during the year immediately preceding been assessed and paid taxes upon property to the amount for which they had become sureties, and that defendant, as a member of said board, approved said bonds willfully and knowingly, and therein failed and refused to perform his official duty. We think the evidence clearly sustains said finding. In fact, it is admitted that said sureties did not possess the proper qualifications; and the appellant seeks to evade responsibility by showing that he was ignorant of the law, and that the county attorney's advice was had upon the matter. It was the duty of the board to approve proper bonds, and not the county attorney. As we understand the record, the county attorney referred to the form of the bond, and not to the sufficiency of the sureties. The county attorney is presumed to know the law as set forth in our statutes and the decisions of the courts, and it is no

part of his duty to ascertain whether a surety possesses the proper qualifications. The county attorney is subject to removal from his office, the same as any other officer, for incompetency; and for him to ignore the law on the questions involved in this case would certainly indicate gross incompetency, To advise the county commissioners that they could, as a board, appropriate money out of the county treasury, and place it in the hands of a commissioner and authorize him to construct roads therewith, under our present law, would clearly indicate corruption or incompetency, if not both. No objection was made to the sufficiency of the allegations of the second cause of complaint in the information, but it has been suggested that it is not alleged that the defendant acted with said board when it was in session in the approval of said official bonds, and for that reason said allegations are not sufficient. We think the allegations of the information should be made clear and specific, and, had objection been to the sufficiency of said allegation, the objection should have been sustained. However, the defendant admits that he acted with the board in the approval of said bonds; and, leaving the second cause of action, as to the approval of official bonds, out of consideration, the record contains sufficient to sustain the judgment of the trial court.

The appellant, as a member of said board, and while acting with said board, authorized the publication of the minutes of their proceedings in three newspapers published in said Fremont county, and paid each of said newspapers therefor. The evidence shows that the defendant opposed and voted against the publication of said proceedings in more than two of said newspapers, and that he did vote in favor of publication in two of said newspapers; and that is alleged to have been an infraction of official duty. The court found that the defendant voted against printing said proceedings in the "Fremont County Journal," and in favor of printing them in the "Fremont County News" and the "Market Lake Sentinel." The

statute contemplates the publication of a synopsis of the pro-
ceedings of the board in but one newspaper in the county.
Counsel for appellant contend that, while the acts of which
their client is accused in many instances were infractions of
the law, it has not been proved that said acts were done fraudu-
lently, willfully, or corruptly. The statute itself (section
7459) does not specifically require that fees shall be fraudu-
lently, willfully, or corruptly charged and collected, to war-
rant the removal of the officer; nor does it declare that neg-
lect of official duty shall be willful or corrupt. The statute
contemplates that when illegal fees are charged and collected,
or when an officer has refused or neglected to perform the of-
ficial duties pertaining to his office, and those facts are prop-
erly shown to a court, the informer has made out his case.
The proof of those facts is proof of the intent with which they
were done, and such acts can only be excused by showing
that they were done or not done by reason of a wrong con-
struction of an obscure or doubtful statute, but cannot be ex-
cused by a plea of ignorance of the plain provisions of the law.
If ignorance of the law will excuse such flagrant violations
of the law as are shown in this case, the people are at the mercy
of ignorant and corrupt officials, and the plea of every dis-
honest or corrupt official would be ignorance of the law. Of-
ficers must be judged by their acts, and not by their plea of
ignorance of the plain provisions of the law after its repeated
violations, which result in their pecuniary or other advantage.

It is contended by counsel for appellant that the court did
not find as a fact that the acts of which the appellant is ac-
cused were done fraudulently, willfully, or corruptly. Fre-
quent violations of the plain provisions of a statute, to the
pecuniary advantage of the officer, are probative facts from
which the ultimate fact of intent may be drawn; and while
it is true that the trial court did not, under the heading of
"Findings of Fact," find that said acts were done fraudulently,
willfully, or corruptly, it did, under the heading of "Conclu-
sions of Law," find that said acts were done fraudulently, will-

fully, or corruptly. The statute requires the trial court to separately state the findings of fact and conclusions of law, but it is often very difficult to distinguish between an ultimate fact and a conclusion of law; and it is held by very respectable authority that, where there is a commingling of findings of fact with conclusions of law, a judgment will not be reversed for that reason, where all of the material issues are found. (*Burton v. Burton,* 79 Cal. 490, 21 Pac. 847.) The remedy provided by section 7459 of the Revised Statutes, to rid the people of a dishonest or incompetent official, is a severe one, but effective; and it serves to stimulate officers to know their official duties and do them. The time has evidently come in this state when county commissioners must know their duties and do them. If they do not, something more effective than a mere appeal from their illegal orders will be resorted to. We have caregully considered all of the errors assigned, and find no reversible error in the record, and the judgment of the court below must be affirmed, and it is so ordered. Costs of appeal are awarded to respondent.

Huston, C. J., and Quarles, J., concur.