(April 27, 1901.)

# PONTING v. ISAMAN.

[65 Pac. 434]

REMOVAL OF COUNTY COMMISSIONER FROM OFFICE—ILLEGAL CHARGES AGAINST COUNTY.—When proceedings under section 7459 of the Revised Statutes are brought to remove a county officer, and the court finds that such officer acted honestly in making such charges against his county, and honestly believed at the time he presented his claim for allowance, and when he collected the same, that such charges were legal, it is error to remove him from office, and enter judgment against him for the penalty provided by said section.

HONESTY OF COMMISSIONER—ADVICE OF COUNTY ATTORNEY.—When it is shown that such officer acted in perfect good faith, and under an honest conviction that he was entitled to the compensation claimed and collected, and was acting under the legal advice of the county attorney, it is error to remove him from his office.

SAME—MONEY ADVANCED BY MEMBER OF BOARD.—When the board of commissioners have legally employed an attorney in a civil case, wherein the county is a party, as shown by the facts of this case, and such attorney demands his fee when the board is not in session, and a member of such board advances the same, he may recover it from the county.

FINDINGS OF FACT—JUDGMENT.—If the findings of fact do not support the judgment, the judgment must be reversed.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

Eugene O'Neill and Miles S. Johnson, for Appellant.

This action is commenced under section 7459 of the Revised Statutes, which allows an individual, in certain specified instances, to file an information for removal of any officer within the jurisdiction of the district court. (*State v. Chicago etc. R. Co.,* 37 Fed. 498.) Justice Brewer in delivering the opinion says: "The distinction between matters of a civil and those of a criminal nature is clear, and of frequent mention in the books." Rapalje and Lawrence, at page 21 of their Law Dictionary, say: "An action is 'civil' when it lies to enforce a private right or redress a private wrong. It is 'criminal' when instituted on

behalf of the sovereign or commonwealth in order to vindicate the law by the punishment of a public offense." (Burrill's Law Dictionary, 294; *Beals v. Thurlow,* 63 Me. 9.) The plaintiff does not sue to compel payment of any debt due to himself or for the redress of any wrong done to himself, but simply to enforce a pecuniary penalty against a wrongdoer. (*United States v. Two Barrels Whiskey,* 96 Fed. 479; *Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. Rep. 524; *Lees v. United States,* 150 U. S. 476, 14 Sup. Ct. Rep. 163; *Thurston v. Clark,* 107 Cal. 285, 40 Pac. 435.) The charges made by the defendant for viewing roads was pursuant to an opinion in writing, given by F. Danford, county attorney, the legally constituted adviser of the board, advising them that they were authorized to charge for said services. We respectfully submit that it would be unjust and contrary to public policy to subject an officer to removal, and a fine for honestly following the advice of an attorney provided him by law. And that if anyone should be proceeded against it should be the attorney giving the erroneous advice. In the case of *Miller v. Smith,* ante, p. 204, 61 Pac. 826, Justice Sullivan says: "County commissioners are provided by law with a legal adviser in the county attorney, and are expected to keep within the law, especially in matters already passed upon by the courts." (*Triplett v. Munter,* 50 Cal. 644; *Smith v. Ling,* 68 Cal. 324, 9 Pac. 171; *Woods v. Varnum,* 85 Cal. 648, 24 Pac. 843.)

Benjamin F. Tweedy and James W. Reid, for Respondent.

Payment is no defense. To hold that payment was a defense the effect would be to say to officials, "You may charge and retain all the illegal fees you can collect, and if by chance you are discovered in taxing illegal sums, you need only refund to avoid all penalties for your errors or wrongs." This would not do. (*Turner v. Blount,* 49 Ark. 361, 5 S. W. 589; *Leggett v. Prideaux,* 16 Mont. 205, 50 Am. St. Rep. 498, 40 Pac. 377.) If we hold to the doctrine that ignorance of the plain provisions of the law is no defense, we must hold that the "probative facts" of charging and collecting illegal fees are the facts from which the ultimate facts must be drawn when there is no mistake of

fact involved whatever.    (*Miller v. Smith,* ante, p. 204, 61 Pac. 827.)

SULLIVAN, J.—This action was commenced under the provisions of section 7459 of the Revised Statutes, which is as follows: "When an information in writing verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the information was presented, and on that day or some other subsequent day, not more than twenty days from that on which the information was presented, must proceed to hear, in summary manner, the information and evidence offered in support of the same, and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained, the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for $500 in favor of the informer and such costs as are allowed in civil cases." The plaintiff (who is respondent here) filed his verified information in writing, charging the appellant, who was then a county commissioner of Nez Perces county, with knowingly, willfully and corruptly collecting illegal fees to the amount of $161.10, and of illegally collecting from said county $100, which said defendant had advanced to one M. F. Gose, for his services as a lawyer, rendered in certain cases wherein said county was interested. The information alleges that the defendant as county commissioner collected illegal fees (1) for his services in making inspection of roads; (2) for attending court as a witness; (3) for $100 advanced by him to employ an attorney; (4) for collecting mileage to which he was not entitled. The defendant answered, admitting that he had collected the various sums alleged to have been collected by him, but denied that he had willfully or corruptly collected said sums knowing them to be illegal charges against the county.

This cause was once before this court (see *Ponting v. Isaman,* ante, p. 283, 62 Pac. 680), and was remanded to the court below for trial. Thereafter the cause came on for trial. Witnesses were examined on behalf of both the plaintiff and defendant, and documentary evidence introduced, and after argument of counsel, the court, being fully advised in the premises, filed findings of fact and conclusions of law, and entered judgment ousting the appellant from his said office, and also entered judgment against him for $500 in favor of the plaintiff, informant, as provided by said section 7459. This appeal is from the judgment on the judgment-roll alone, which contains no bill of exceptions, nor any part of the evidence introduced on the trial.

Two points are relied upon for a reversal of the judgment, to wit: 1. That the cause was tried by the judge at chambers, and that the judge had no jurisdiction to try the same; and 2. That the judgment is not supported by the findings.

On the first point the record contains certain affidavits showing that said cause was tried by the judge at chambers. The record and judgment, however, recite that the cause was tried by the court without a jury, and on this appeal we are bound by the record, and for that reason hold that the cause was tried by the court, and not by the judge at chambers.

The second assignment of error is that the judgment is not sustained by the findings. The court finds that the appellant, in making the charges complained of against the county, for services rendered in examining the roads and bridges in his district, and the expenses of team hire connected therewith, honestly believed that it was his duty as such commissioner to perform such services, and that he honestly believed, when making said charges and collecting the same from the county, that he was legally entitled thereto. The court further finds that all of the charges and collections made by the appellant for viewing roads, for work upon roads, and all charges made for services on public roads, were for services actually performed, and that prior to performing such services the board of county commissioners, of which this appellant was a member, required the opinion of the county attorney (who was by law made the legal adviser of said board) as to the duty of said commissioners in viewing pro-

posed roads, and roads being constructed, and that said board received the written opinion of said county attorney to the effect that it was their duty to perform such services in their respective districts, and that they were entitled to compensation therefor; that appellant relied upon the said opinion of the county attorney, and acted upon it in said matter, and from time to time performed such services in his district, and honestly believed that he was entitled to the amount charged and collected by him from the county at the time he charged and collected the same. The court also found that all of the illegal charges made for mileage were for miles actually traveled by appellant in going to and from the attendance upon public duties, and such acts as appellant honestly believed to be public duties, and that such charges were made under the belief that the statute which formerly governed the compensation of commissioners had been decided by the supreme court of Idaho to be still in force to that extent; that appellant made all such charges for mileage while so believing, and that he honestly believed that he was entitled to said mileage when he charged and collected the same. The court also found that appellant had paid back to the treasurer of said Nez Perces county the said several sums mentioned in said findings as having been taken and received by him. The court thus found that the appellant was honest in the discharge of his duties and in making said charges against the county. In the enactment of said section 7459, we do not believe it was the intention to visit the severe penalty provided by said section when the officer acts in perfect good faith, and under an honest conviction that he is acting within the law, or for an honest error of judgment when honestly acting under the advice of the legal adviser provided for him by law.

As to the $100 paid to Attorney Gose, the court found that said board of commissioners had employed the said Gose to represent the county in some civil litigation in which said Nez Perces county was a party, and that appellant had, upon the demand of said Gose, at a time when said board was not in session, paid said Gose $100 for his services in said litigation, and at the next session of said board the appellant presented his claim against said county for the sum so advanced to Attorney Gose,

and said claim was allowed. It is contended that, by reason of the appellant having thus advanced for said county said $100, he must be removed from office, and mulcted in the sum of $500, to be paid to the informer. We are not inclined to sustain such an outrageous and unjust contention. The board had found it necessary to employ an attorney to protect the interest of their county, and had employed said Gose. When the board was not in session he demanded his fee, and appellant advanced it, trusting to the county to reimburse him therefor. Under the facts as found by the trial court in this matter, it would be most unjust and contrary to law to remove the appellant from office, and fine him in the sum of $500 or any sum whatever. This court held in *Osborne v. Ravenscraft,* 5 Idaho, 612, 51 Pac. 618, that where a county was engaged in litigation, and the necessity for the present payment of a small amount of costs arose, and a member of the board of commissioners for the county advanced the required sum, the allowance of the sum so advanced by the board will not be reversed on appeal. The opinion in that case is by Mr. Justice Huston, and contain suggestions pertinent to the case under consideration.

It is contended that the provisions of section 1772 of the Revised Statutes, prohibits the presentation of the claim under consideration. Said section is as follows: "No county officer must, except for his own services, present any claim, account or demand for allowance against the county, or in any way advocate the relief asked on the claim or demand made by another. Any citizen and taxpayer of the county in which he resides may appear before the board and oppose the allowance of any claim or demand made against the county." The appellant did not advance said $100 as a commissioner of said county, nor did he present his claim against the county as an officer of said county and we do not think that this claim comes within the spirit of the provisions of said section.

As to the charge of twelve dollars for two days' attendance in court as a witness in the Vollmer Bank cases, the court found that the appellant did actually perform four days' services as a witness in litigation between John P. Vollmer and Nez Perces county, in the district court of said county; and also found that

at the time said services were performed the appellant was chairman of the board of county commissioners, and, at the request of said court, was notified by the attorney representing the county to attend; that appellant was not subpoenaed as a witness, and intended, by said charge for two days, to obtain the amount per day allowed witnesses in civil cases; that said charge and collection was made under the honest belief that he had the right to so charge and collect; and that the three dollar charge was for a team furnished by appellant, and actually used by the commissioners to view certain important roads, when important changes were contemplated; and that said charge and collection was made with the honest belief that it was a legal charge. The facts as found by the court are very different from the facts in the case of _Rankin v. Jauman,_ 4 Idaho, 394, 39 Pac. 1111, and _Miller v. Smith,_ ante, p. 204, 61 Pac. 824, as an examination of those cases will show. Some of the items charged for in those cases were similar to some in the case at bar. This court had the evidence before it on those appeals, and it clearly showed that the defendants did not act honestly, believing that the charges made were legal claims against their respective counties; while in the case at bar we have only the findings of fact to consider, and they clearly show that the appellant acted under the advice of the legal adviser of the board in making most of the charges complained of, and there is nothing to show that there was collusion between them in this matter, and the court expressly finds that there was not, by finding as follows, to wit: "That the defendant made all of such charges while so believing, and that he honestly believed he was entitled to said mileage when he charged and received the same." It is also found that the money illegally collected has been paid to the treasurer of said county. While the return of the money is not, of itself, a defense to this action, it is a fact to be considered in this case in determining the good faith and honest belief of the appellant. It is not sufficient for a defendant in a proceeding of this kind to testify that he acted under an honest belief in making illegal charges. The whole transaction must be considered, and if his acts show that he acted honestly, and without intent to defraud his county, and especially when he

sought honestly the opinion of the legal adviser provided by law for him, we do not believe that it was the intent of the legis- lature, in enacting said section 7459, to inflict on him the stigma and severe penalty of ouster from his office and the payment of a fine of $500. It is elementary that the findings of fact must support the judgment, and, if not, the judgment must be re- versed. The judgment must be reversed, and it is so ordered, and the cause remanded, with instructions to the trial court to set aside said judgment, and to enter a judgment in favor of the appellant dismissing said action, and for costs of this proceed- ing. Costs of this appeal are awarded to the appellant.

Stockslager, J., concurs.

QUARLES, C. J., Dissenting.—It is with regret that I find my views of this case opposed to those of my associates. In my opinion, the decision herein virtually overrules a number of decisions heretofore rendered by this court, and makes the opinion of a county attorney paramount to the statutes of this state and the decisions of the court of last resort. The law of this case, following the rule of our code (see section 3818 of the Revised Statutes), was established by this court upon a former appeal. (See *Ponting v. Isaman,* ante, p. 283, 62 Pac. 680.) That decision was binding upon the district court, and the district court properly observed it, and followed it. Now, strange to say, this court holds that the district court erred in following the former decisions of this court in this case. The conclusion reached is based upon the idea that the appellant, in claiming and collecting illegal fees from his county, acted with the belief that he was entitled to such fees. The fees consisted of *per diem* charges and mileage for services rendered by appellant as a county commissioner for viewing and supervising road and bridge work, for which he charged the regular *per diem* wage allowed by law to commissioners and mileage in traveling. The conclusion of the trial court to the effect that appellant believed that he was entitled to the compensation claimed by him, and by him collected from his county, is evidently based upon the following opinion given by the county attorney of Nez Perces county to the board of

commissioners of his county, and which is set forth in full in the answer of appellant, in words and figures as follows: "To the Board of County Commissioners of Nez Perces County, Idaho.

"Gentlemen: It seems to me that a fair construction of the laws of this state authorizes members of your board to examine and inspect the roads of your respective districts for the purpose of determining and directing the kind, character, and amount of work to be done in the several road districts of your county, and that the law, under such circumstances, authorizes compensation therefor. Any other construction of the law, in my opinion, would preclude the idea of your properly directing the work required of you under our statutes.

"Very respectfully,

"F. DANFORD,

"Prosecuting Atty."

This opinion by the county attorney was given, as alleged in appellant's answer, in July, 1899. As early as March 7, 1895, this court held in the case of *Rankin v. Jauman,* 4 Idaho, 394, 39 Pac. 1111, as follows: "The *per diem* allowed by the statute to the members of boards of county commissioners is only chargeable for the time the board is actually in session. County commissioners can only act or claim compensation as such while acting as a board. The law does not contemplate that members of the board may perform services for the county as individuals, and then charge for it as commissioners. The viciousness of such course is too apparent to require comment." In the same case this court further said: "The board of county commissioners are an entirety. They can only act collectively and as empowered by law. They are only engaged in transacting county business, as that term is used in section 5 of the act of 1891, when acting as a board, and it is only while so acting that they can legally charge either *per diem* or mileage. It needs no authority to support this proposition." In the same case, speaking of the defense attempted, to the effect that the defendant believed that he was entitled to the compensation charged and collected,

this court said: "Credulity is not esteemed a paramount virtue of the judicial mind, but surely the recognition of such a flimsy excuse, for it does not rise to the dignity of a defense, as is offered in this case, must involve something more than mere credulity. Officers are supposed to know the law under which they act. The maxim, '*Ignorantia legis neminem excusat*,' is forcefully applicable in their case."

The rule laid down in *Rankin v. Jauman* has been followed by this court in a number of cases. (See *Hampton v. Board,* 4 Idaho, 646, 43 Pac. 324; *Conger v. Board,* 5 Idaho, 347, 48 Pac. 1064; *Miller v. Smith,* ante, p. 204, 61 Pac. 824.) In the latter case this court, speaking through Mr. Justice Sullivan, said: "The defendant testified in his own behalf that his belief and understanding were that it was his duty, as county commissioner, to take care of all roads and bridges, where it was absolutely necessary, and that he should get therefor six dollars per day." This court held in *Rankin v. Jauman,* 4 Idaho, 394, 39 Pac. 1111, as follows: "The *per diem* allowed by the statute to members of the board of county commissioners is only chargeable for the time the board is actually in session. The law does not contemplate that members of the board may perform services for the county as individuals, and then charge for it as commissioners. The viciousness of such course is too apparent to require comment.' . . . . The law does not authorize a member of the board to act for the board, nor has it given a single member of the board, when acting alone, any authority whatever. . . . . If county commissioners were permitted to usurp the office of road overseer, and perform the duties of such officer, and pay themselves six dollars per day and expense therefor, road work would cost the taxpayers much more than was contemplated by the law-making power; and county commissioners cannot shield their unlawful acts under the plea of ignorance of the law, for if that would relieve them of persistent and many times repeated unlawful acts, it would be impossible to remove an unfaithful or incompetent officer from office." In this same case, in the second, third, fourth, fifth, and sixth syllabi, prepared by Mr. Justice Sullivan, the rules laid down in the opinion for the

guidance of the district courts and the bar are tersely stated in the following language: "(2) Individual members of the board of county commissioners cannot perform services for the county, and charge for them as commissioners. (3) Boards of commissioners are entireties, and can only act as empowered by law and collectively. (4) The board is given certain limited powers, and a single member of such board is not empowered to act alone and bind the county in any manner. (5) Members of the board cannot perform duties of road overseers, and draw pay therefor as commissioners. (6) The plea of ignorance of the law will not protect a member of the board from removal from office when it is shown that he has repeatedly violated the plain provisions of the law." And in the thirteenth syllabi, prepared by Mr. Justice Sullivan, the further rule is tersely stated in this language: "Frequent violations of the plain provisions of the law are probative facts, from which the ultimate fact of fraudulent, willful, or corrupt intent may be drawn."

Apply the rules laid down in *Miller v. Smith, supra,* to the case at bar. Here the trial court found that for eighteen different days the appellant charged, allowed himself, and collected from his county *per diem* of six dollars for services in looking after roads and bridges; yet the judgment ousting him from office is reversed because the district court finds this ultimate fact: that he "honestly believed that he was entitled to the amounts charged and received at the time he made said charges, and at the time he received said moneys therefor." The probative facts found by the district court show conclusively that appellant charged and collected illegal fees from his county. The law in regard thereto is "plain," and involves no obscure statute. This case, in so far as the charges for road and bridge supervising is concerned, is identical with the case of *Miller v. Smith, supra.* Charges for illegal fees are repeatedly made. The facts found by the court show that they were repeated eighteen times, yet the ultimate fact, or conclusion resultant from those facts, as determined by the district court, to the effect that he acted honestly, is upheld. One rule is applied to Smith; another, under the same con-

ditions, is applied to appellant. If the violations. of plain provisions of the law in the case of Commissioner Smith, repeatedly made, cannot be "protected" or excused on the plea of ignorance of the law, or the same thing, that he thought he was right, how can it in the case of the appellant? Why should the one be treated as flesh, and the other as fish?

The decision in the case at bar is so palpably wrong, so palpably inconsistent with the laws of this state, statutes, and former decisions, that I am unable to assent thereto. The correct and consistent administration and application of law is of much more importance than is the result of a controversy of the kind before us in any particular case. If the rule is to be adopted and followed in this jurisdiction that officers may collect from their counties illegal fees, and escape the punishment for such act prescribed by section 7459 of the Revised Statutes, upon the plea that he "honestly believed that he was entitled to such fees," then, verily, the taxpayers of this state are at the mercy of dishonest officials, and the county treasuries will be looted and plundered at will. Said section is as follows: "When an information in writing, verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the information was presented, and on that day or some other subsequent day, not more than twenty days from that on which the information was presented, must proceed to hear, in a summary manner, the information and evidence offered in support of the same and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained, the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for $500 in favor of the informer and such costs as are allowed in civil cases."

Now, it is palpable that the decision in this case violates the statute quoted. The least that may be said is that it amends the statute by interjecting into it something which the legislature did not place there, to wit: "Provided, that if such fees are collected by advice of the county attorney, or the officer honestly believes that he is entitled to charge and collect the same, then the judgment shall be in favor of the officer informed against." What right has this court to amend or alter or change the statute? Illegal fees were repeatedly charged by the appellant. The district court so finds. Yet, because the district court finds that appellant "honestly believed" that he was entitled to charge and collect such fees at the time he did so, notwithstanding the statute, he must not be removed, and must be exonerated from the penalties prescribed by the statute. It will be noted that the statute says absolutely nothing about the intention with which the illegal charges are made. If illegal fees have been charged and collected by an officer, the facts stated in a verified information, and proven at the hearing, the court must enter judgment removing the officer and awarding the penalty. The duty of the court is plainly set forth in the statute. It is an assumption of power on the part of the court to change the meaning or terms of the statute, and the court should certainly abstain from imposing terms not prescribed by the statute, or in refusing to obey the express language and intent of the statute.

Upon this particular point I desire to quote further from the decision in *Miller v. Smith, supra,* where this court, speaking through Mr. Justice Sullivan, said: "Counsel for appellant contend that, while the acts for which their client is accused in many instances were infractions of the law, it has not been proved that said acts were done fraudulently, willfully, or corruptly. The statute itself (section 7459) does not specifically require that fees shall be fraudulently, willfully, or corruptly charged and collected, to warrant the removal of the officer, nor does it declare that neglect of official duty shall be willful or corrupt. The statute contemplates that when illegal fees are charged and collected, or when an officer has refused or neglected to perform the official duties pertaining

to his office, and these facts are properly shown to a court, the informer has made out his case. The proof of those facts is proof of the intent with which they were done, and such acts can only be excused by showing that they were done or not done by reason of a wrong construction of an obscure or doubtful statute, but cannot be excused by a plea of ignorance of the plain provisions of the law. If ignorance of the law will excuse such flagrant violations of the law as are shown in this case, the people are at the mercy of ignorant and corrupt officials, and the plea of every dishonest or corrupt official would be ignorance of the law. Officers must be judged by their acts, and not by their plea of ignorance of the plain provisions of the law after its repeated violations, which result in their pecuniary or other advantage. It is contended by counsel for appellant that the court did not find as a fact that the acts of which appellant is accused were done fraudulently, willfully, or corruptly. Frequent violations of the plain provisions of a statute, to the pecuniary advantage of the officer, are probative facts from which the ultimate fact of intent may be drawn; and while it is true that the trial court did not, under the heading of 'Findings of Fact,' find that said acts were done fraudulently, willfully, or corruptly, it did, under the heading of 'Conclusions of Law,' find that said acts were done fraudulently, willfully, or corruptly. . . . . . The remedy provided by section 7459 of the Revised Statutes, to rid the people of a dishonest or incompetent official, is a severe one, but effective, and it serves to stimulate officers to know their official duties, and do them. The time has evidently come in this state when county commissioners must know their duties and do them. If they do not, something more than a mere appeal from their illegal orders will be resorted to." I felt it my duty to concur in the opinion written by Mr. Justice Sullivan in *Miller v. Smith,* *supra,* and did so. I still concur in the views therein expressed. But the decision in this case is a repudiation of the views expressed in *Miller v. Smith,* as I have endeavored to show by quotation from the latter decision. No logical or sound distinction can be drawn between this case and the case

of *Miller v. Smith,* cited *supra.* In that case Smith, as county commissioner, charged and collected six dollars *per diem* for twenty-six days spent in looking after road and bridge work, and presented bills for money expended in the construction of roads. In this case appellant charged and collected six dollars *per diem for* eighteen days spent in looking after road and bridge work, and presented claims for money paid to an attorney, and for mileage ($40.50) for traveling one hundred and thirty-five miles, and other claims for team work. A careful and analytical reading of the opinion in *Miller v. Smith,* and that of the majority of the court in this case, shows that the case of *Miller v. Smith* is on all fours with the case at bar. This case should follow *Miller v. Smith* and *Rankin v. Jauman, supra.*

There is another error, according to my judgment, in the decision in this case, and that is in holding that commissioners may pay out funds for the county, and claim and collect them back from the county. Section 365 of the Revised Statutes is as follows: "Members of the legislature, territorial (state), county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members." Section 1782 of the Revised Statutes, relating to county commissioners, provides: "No member of the board must be interested, directly or indirectly, in any property purchased for the use of the county, nor in any purchase or sale of property belonging to the county, nor in any contract made by the board or other person on behalf of the county, for the erection of public buildings, the opening or improvement of roads, or the building of bridges, or for other purposes." Section 1772 of the Revised Statutes, is as follows: "No county officer must, except for his own services, present any claim, account or demand for allowance against the county, or in any way advocate the relief asked on the claim or demand made by another." This court in *Osborn v. Ravenscraft* affirmed a judgment in favor of a commissioner for cost paid by him in a suit, holding the appeal in that case "frivolous." But under the statutes quoted, and that well-defined public policy upon which

the statutes are founded which prohibits officials from being interested in any public business against the constituents that they represent. I feel that the decision in *Osborn v. Ravenscraft* is wrong, and not in harmony with our statutes. At any rate, I feel unable to sanction the doctrine that county commissioners have the right or power, under our statutes, to make themselves creditors of the county. The law provides for their compensation. The law prohibits them from dealing with the county or becoming creditors of the county; and section 1772 of the Revised Statutes expressly prohibits them from presenting any claim against the county, except for personal services. In *Miller v. Smith, supra,* we held that county commissioners could not draw out of the county treasury money, and use the same in building bridges and roads. What difference, in principle, is there in that act and the act of building the bridge or road, and paying for it out of the pocket of the commissioner, and then paying it back to him? The principle condemned in *Miller v. Smith, supra,* is the same as that commended and sanctioned in the decision in this case. Under the laws of this state, county commissioners must hold the sessions of their boards at the county site. They can only act as boards. They cannot act as road overseers, or charge and collect compensation for so doing. If they charge and collect illegal fees, they are subject to removal. These rules, however, are not applied to the case at bar. Here the plea of ignorance of plain provisions of the law, presented in the guise of an "honest belief" that appellant was entitled to the illegal fees which he charged and collected, and which this court characterized in *Rankin v. Jauman, supra,* as "a flimsy excuse, for it does not rise to the dignity of a defense," and which this court said in that case "must involve something more than mere credulity," is recognized to the extent of defeating the provisions of section 7459 of the Revised Statutes, so far as this case is concerned. I cannot assent to such action by this court. The judgment in this case should be affirmed.

## ON REHEARING.

### (June 20, 1901.)

SULLIVAN, J.—This is a petition for a rehearing, which we have carefully considered, and find that it contains nothing but what was considered in our decision heretofore rendered. Counsel for the petitioner contends that there is no distinction between this case and the cases of *Rankin v. Jauman,* 4 Idaho, 394, 39 Pac. 1111; *Miller v. Smith,* ante, p. 204, 61 Pac. 824; *Smith v. Ellis,* ante, p. 196, 61 Pac. 695. But to us there is a clear distinction, and the decision in this case in no way modifies or overrules the law as laid down in those cases. In those cases the record clearly shows that the defendants knowingly, willfully, and corruptly charged and collected fees to which they were not entitled, while in the case at bar the record shows that the illegal fees charged and collected were not knowingly, willfully, or corruptly charged and collected. In the former cases the intent to swindle the county is shown; in the latter, it is not. A rehearing is denied. What we have said as to a rehearing in the case of *Ponting v. Isaman* applies to the petition for a rehearing in *Tannahill v. Black,* post, p. 594, 65 Pac. 1113, and a rehearing in that case is denied.

Stockslager, J., concurs.

QUARLES, C. J., Dissenting.—For the reasons stated in the dissenting opinion in this case, a rehearing should be granted.