# THE STATE OF NORTH DAKOTA v. C. O. BORSTAD.

## (147 N. W. 380.)

**Removal of public officers — remedy — special practice.**

1. The proceedings provided for in § 9646, Rev. Codes 1905, for the removal of public officers by accusation, are of a character which is peculiar to themselves, and the remedy is one in which the legislature has seen fit to provide a special practice which governs in such proceedings only.

**Remedy — summary — protection of the public — incompetent officials.**

2. The legislature in enacting § 9646, Rev. Codes 1905, intended to provide a remedy which should be summary in its nature, and which, by avoiding technical delays, might serve to protect the public from the acts of incompetent or dishonest officials.

**Due process of law — administration of justice.**

3. The due process of law which is provided in § 9646, Rev. Codes 1905, only recognizes those rules of procedure which are fundamental in their nature and essential to the administration of justice.

**Demurrer — pleading — unauthorized.**

4. No demurrer is contemplated or authorized by § 9646, Rev. Codes 1905.

**Evidence — objection to introduction — real merits of the case — improper joinder of parties — will not lie — issues— separate trial.**

5. Under § 9646, Rev. Codes 1905, an objection to the introduction of any evidence under the accusation can only be sustained where the defects which are complained of affect the real merits of the controversy and the real and fundamental rights of the defendant. It will not lie for a mere improper joinder of parties defendant and issues affecting such parties, where these issues and parties have been eliminated by the granting of a motion for a separate trial.

**Examination of adverse party — right of — incriminating testimony — exemption from giving — privilege must be asserted and claimed.**

6. Under the proceedings authorized by § 9646, Rev. Codes 1905, an examination of the adverse party upon the trial may be had under § 7252, Rev. Codes 1905, as amended by chap. 4, Laws of 1907, provided, however, that the right of the defendant to refuse to testify as to matters which might tend to render him liable to prosecution in a criminal action is recognized and preserved. This

Note.—The authorities on the question of the right to remove officers summarily, generally, are reviewed in a note in 15 L.R.A. 95. Upon the question of the power of a town or municipality to remove officer in absence of statutory authority, see notes in 9 L.R.A.(N.S.) 572, and 39 L.R.A.(N.S.) 519.

privilege, however, is a privilege which must be specifically asserted and relied upon by the defendant.

**County commissioners — charges — per diem fee for going to and returning from meetings — unlawful — ground for removal.**

7. A board of county commissioners have no right or authority to charge a *per diem* for time spent in going to and from the meetings of the board; and the charging of such a fee is a ground for removal from office under § 9646, Rev. Codes 1905.

**County commissioners — overseers of the poor — per diem.**

8. Although § 1851, Rev. Codes 1905, makes the county commissioners of the several counties overseers of the poor, such commissioners, when acting as such overseers, are only entitled to the *per diem* of two dollars ($2) provided for by § 1868, and not to the *per diem* of four ($4) and five dollars ($5) provided for by § 2613, Rev. Codes 1905, and chapter 119 of the Laws of 1911.

**County commissioners — visiting neighboring county — care of poor — overseer of the poor — per diem.**

9. A visit of a county commissioner to a neighboring county for the purpose of trying to arrange for the care of the poor of his district in such neighboring county is a visit as an overseer of the poor, and not as a county commissioner, and the *per diem* of an overseer of the poor can only be charged therefor.

**Seed grain law — county commissioner — charges — services — applications for seed.**

10. Chapter 210 of the Laws of 1909, commonly known as the seed grain law, gives to a county commissioner no right to charge for services rendered in receiving applications for loans of seed grain, or for collecting the sums due to the county therefor, or in protecting the liens of the county. Nor is such charge warranted by the fact that § 2401, Rev. Codes 1905, as amended by chap. 118, Laws 1911, make it the duty of such commissioners to "superintend the fiscal affairs of the county."

**Officers — removal — charging illegal fees — proof — degree of — reasonable doubt.**

11. To justify a removal from office under § 9646, Rev. Codes 1905, for charging illegal fees, it is not necessary to prove the fact of such charging beyond a reasonable doubt.

**Illegal charges — services outside of office — removal.**

12. Where a member of a board of county commissioners charges illegal fees while in office and in his reports as such officer, he will not be allowed to say that such fees, though illegal and unwarranted, were for services outside of his office, and that the charging thereof is therefore not a ground for removal under § 9646, Rev. Codes 1905.

Opinion filed April 30, 1914.

Appeal from the district court of Williams County, *Leighton, J.*

Action to remove from office under §.9646, Rev. Codes 1905. Judg-. ment for plaintiff. Defendant appeals.

Affirmed.

Statement by BRUCE, J.

This is an accusation under § 9646 of the Revised Codes of 1905, in which the appellant and defendant, C. O. Borstad, is charged with collecting illegal fees for services rendered in his office as a member of the board of county commissioners of Williams county, North Dakota, and his removal from such office is sought for these reasons. A demurrer was interposed to this accusation, which was overruled, as well as an objection to the introduction of any evidence thereunder. A jury trial was then had, and a verdict rendered, finding appellant guilty as charged in the accusation. This appeal is taken from an order denying a motion for a new trial.

*Palmer, Craven & Burns,* and *D. C. Greenlief,* for appellant.

There was an improper joinder of several causes of action, not contemplated by the statute. Rev. Codes 1905, § 9646.

The state had no right to call and cross-examine the defendant, as an adverse party, as is permitted in a civil action. The action is penal in its nature. Boyd v. United States, 116 U. S. 616, 29 L. ed. 746, 6 Sup. Ct. Rep. 524; Lees v. United States, 150 U. S. 476, 37 L. ed. 1150, 14 Sup. Ct. Rep. 163; Thurston v. Clark, 107 Cal. 285, 40 Pac. 435; Triplett v. Munter, 50 Cal. 644; Minnehaha County v. Thorne, 6 S. D. 449, 61 N. W. 688; 17 Cyc. 233.

The charges made on outside trips were not "charges and collections of illegal fees for services rendered in his office," as the court erroneously charged the jury. State v. Bauer, 1 N. D. 273, 47 N. W. 378; Law v. Smith, 34 Utah, 394, 98 Pac. 300; Rev. Codes 1905, § 2613.

The state in such an action must establish its case by evidence amounting to more than a fair preponderance. 2 Enc. Ev. 785, 787.

In such cases the burden of proof does not shift to defendant at any stage of the trial. 2 Enc. Ev. 779, 787.

*U. L. Burdick,* State's Attorney, Williams County, for respondent (*H. W. Braatelien,* of counsel).

This defendant was not tried upon or for any wrongs which may have been committed by any other of the members of the board. Rev. Codes 1905, §§ 7012, 9536; State ex rel. Smith v. Leon, 66 Wis. 199, 28 N. W. 140.

A demurrer does not lie in any such proceeding. Myrick v. McCabe, 5 N. D. 422, 67 N. W. 143.

In such case defendant may be called and cross-examined as an adverse party, under the statute. Boyd v. United States, 116 U. S. 616, 29 L. ed. 746, 6 Sup. Ct. Rep. 524 (Distinguished).

This is in no sense a criminal action, and the cross-examination of defendant as an adverse party was proper. N. D. Code § 9646; Woods v. Varnum, 85 Cal. 639, 24 Pac. 843; Rankin v. Jauman, 4 Idaho, 394, 39 Pac. 1111; Hays v. Young, 6 Idaho, 654, 59 Pac. 1113; Ponting v. Isaman, 7 Idaho, 283, 62 Pac. 680; Hays v. Simmons, 6 Idaho, 651, 59 Pac. 182; Fuller v. Ellis, 98 Mich. 96, 57 N. W. 33.

The right to cross-examine in cases where permitted by statute is for the benefit of the public. Skeen v. Craig, 31 Utah, 20, 86 Pac. 487; Skeen v. Chambers, 31 Utah, 36, 86 Pac. 492; Ex parte Wall, 107 U. S. 265, 27 L. ed. 552, 2 Sup. Ct. Rep. 569; Royall v. Thomas, 28 Gratt. 130, 26 Am. Rep. 335; Ponting v. Isaman, 7 Idaho, 283, 62 Pac. 680.

A county commissioner cannot make such charges, and then claim they were not incurred while acting as such official. Skagit County v. American Bonding Co. 59 Wash. 1, 109 Pac. 199; State v. Bauer, 1 N. D. 273, 47 N. W. 378.

The duties of county commissioners are fixed and defined by statute, and it is not the province of the court to entertain a change. State ex rel. Walklin v. Shanks, 25 S. D. 55, 125 N. W. 122; Green v. Okanogon County, 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; Merrick County v. Batty, 10 Neb. 176, 4 N. W. 959; Erskine v. Steele County, 4 N. D. 345, 28 L.R.A. 645, 60 N. W. 1050; Wheeler v. Wayne County, 132 Ill. 599, 24 N. E. 625.

Bruce, J. (after stating the facts as above). The first point raised by appellant is that the court erred in overruling the demurrer and the objection to the introduction of any evidence under the accusation. The accusation accused the appellant and four other commissioners with charging and collecting illegal fees. Defendant and appellant contends that several separate causes of action against several commissioners were united, and that no such joinder is authorized and contemplated by § 9646, Rev. Codes 1905, under which the proceedings were brought.

The proceedings provided for in § 9646, Rev. Codes 1905, are neither civil nor criminal, but of a character peculiar to themselves. The remedy is one "in which the legislature has seen fit to provide a special practice which governs in such proceeding only, and is not elsewhere used, either in civil actions or in special proceedings, so called. The legislature creating this remedy has seen fit to borrow a few features only of the procedure which governs in civil actions, but the whole of such procedure has not been incorporated in this statute." The act, indeed, establishes its own due process of law. Myrick v. McCabe, 5 N. D. 422, 67 N. W. 143; Rankin v. Jauman, 4 Idaho, 394, 39 Pac. 1111; Woods v. Varnum, 85 Cal. 639, 24 Pac. 843; Skeen v. Craig, 31 Utah, 20, 86 Pac. 487; Ponting v. Isaman, 7 Idaho, 283, 62 Pac. 680; Fuller v. Ellis, 98 Mich. 96, 57 N. W. 33. The object of the statute is to protect the public from corrupt officials, and not to punish the offenders. Ponting v. Isaman, 7 Idaho, 283, 62 Pac. 680. The right of the legislature to act in the matter arises from the exigencies of government, and is to be found in its inherent power to act upon all subjects of legislation, subject only to constitutional restrictions. There are to be found in the Constitution of North Dakota no provisions which forbid a special procedure in such matters.

In the new process of law that is prescribed, there is no insistence upon the strict rules of practice which prevail in either civil or criminal actions. The intention of the legislature seems to have been that the remedy should be summary, and that all technicalities should be waived. It seems, indeed, to have contemplated a speedy hearing, in order that the public might be protected from incompetent or dishonest officials, and that only those rights of established procedure should

be recognized which are fundamental in their nature and essential to the administration of justice. Myrick v. McCabe, 5 N. D. 422, 67 N. W. 143. No demurrer to the accusation seems to have been contemplated, as its interposition would necessitate delay. Ibid.

Nothing is said in the statute or in the case of Myrick v. McCabe, supra, in regard to an objection to the introduction of any evidence under the accusation. We believe, however, that the same reasoning and principles apply, and that in this matter, as in the case of the demurrer, we must bear in mind the fact that the affording of a summary and speedy relief was a controlling part of the legislative intention. For these reasons we believe and hold that an objection to the introduction of any evidence under the accusation should be allowed and sustained where it affects the real merits of the controversy and the real and fundamental rights of the defendants. It should not be sustained where the only defects complained of are an improper joinder of parties defendant and of issues involving different parties, and those defects have, as in the case at bar, been cured and eliminated from the proceedings by the granting of a motion for a separate trial. It is claimed, it is true, that the mere making of such a request has a tendency to prejudice the movant by arousing the hostility of the other defendants. It is difficult, however, for us to see how the separation of the issues by a motion for a separate trial would evoke the enmity of the other wrongdoers, any more than a separation of such issues by a demurrer or by an objection to the admission of evidence under the complaint, based upon the ground of an improper joinder of parties. In the case at bar, also, it is by no means unworthy of consideration that the other defendants were not called as witnesses by either side.

Nor do we believe that the trial court erred in permitting the examination of the defendant as an adverse party. The examination was not held prior to the trial, but upon it. It was not a preliminary examination of the adverse party, but an examination of him as a defendant during the trial. It was a denial merely of the right to assert the old common-law privilege of refusing to testify in an action against one's self during the pendency of that trial. Sec. 9646 of the Revised Codes of 1905 provides that the trial shall be conducted in the same manner as a trial by jury in a civil action. There is no question that

in a civil action the defendant can now be compelled to testify. Sec. 7252 provides for the examination of the adverse party upon the trial, and is entirely separate and distinct from § 9646, which provides for an examination before trial. Whether such examination can be had under the proceedings authorized by § 9646 is not necessary for us to determine. It is sufficient to say that the examination can be had under the proceedings authorized by § 7252, as amended by chap. 4, Laws of 1907, provided that in such examination the constitutional right of the defendant to refuse to testify as to matters which may tend to render him liable to prosecution in a criminal action is recognized and preserved. This privilege, however, is a privilege which must be specifically asserted and relied upon, and we find no such assertion in the record before us.

Counsel for appellant takes exception to the court's instruction that the defendant had no right to charge a *per diem* for time spent in going to and from the meetings of the board of commissioners, and that the charging of such fee furnished a ground for removal from office. It is admitted that the instruction is sustained by the decision of this court in the case of State v. Richardson, 16 N. D. 1, 109 N. W. 1026, but counsel asks us to review and overrule that decision. This, however, we can hardly do. Though we may doubt the wisdom and justice of the rule therein announced, and though the opinion was signed by but two justices (the third not participating), its public policy has been affirmed by two legislatures, and it once having been the established law, we now feel that it is for the legislature, and not for us, to overturn it, if overturned it should be.

The opinion in the case of State v. Richardson, indeed, was handed down in November, 1906. In 1911 the statute as construed by that decision was reconsidered and amended by the legislature, and the *per diem* raised from $4 to $5. No other change, however, was made in the statute. See chap. 119, Laws 1911. It is quite reasonable to presume, and in fact we must presume, that the legislature of 1911 reconsidered the whole act as construed by the case of State v. Richardson, supra, and that the increase of $1 per day for the *per diem* was made in consideration of the holding in that case. Again and in the legislative session of 1913, a bill was introduced which specifically

provided for a *per diem* fee for time spent in coming from and going to county commissioners' meetings, provided that the commissioner lived more than 20 miles from the county seat. This bill was rejected, though it is quite clear that the whole matter was canvassed and discussed.

The question, indeed, has not only been passed upon in a prior decision of this court, but the public policy and wisdom of that decision has been considered in two legislative sessions, in both of which it has been approved and upheld. It is hardly within our province to now change the rule, even if we desired to do so.

Appellant also objects to the court's instruction that the state was required to prove by a fair preponderance of the evidence that the illegal charges were made, etc. His first claim is that the acts complained of, if illegal at all, were of a criminal nature, and that the proof should have been beyond a reasonable doubt. His next contention is that even if not criminal, they were, if illegal at all, fraudulent in their nature, and, being such, the proof was required not merely to preponderate, but to be clear and convincing, and that the jury should have been so instructed.

In answering the first point, it is sufficient to say that the present proceedings are not strictly criminal in their nature, and the statute has expressly provided that the civil rules of practice shall prevail on the trial.

As far as the charge of fraud is concerned, if such a charge is involved at all, the instruction that the same must be proved by a fair preponderance of the evidence was sufficiently favorable to the defendant, and all that was required under the authorities. All that is necessary, indeed, in civil cases, is that fraud shall be satisfactorily and clearly proved, and the language usually used by the courts is, "by a preponderance of the evidence and to the satisfaction of the jury." This was the clear meaning of the words, "by a fair preponderance of the evidence," which were used by the trial court. Jones, Ev. § 192.

We find no merit in the contention that the charge for the attendance at the association of county commissioners at Fargo, which is conceded was illegal, was not "a charge and collection of illegal fees for services *in his office*," for which the defendant could be removed. It

is sufficient to say that it was presented and allowed as a fee of the office. See Rankin v. Jauman, 4 Idaho, 394, 39 Pac. 1111.

Nor did the court err in charging the jury that the defendant was not entitled to charge as a commissioner for his visit to Minot for the purpose of seeing if arrangements could not be made with the Ward county board to receive the Williams county paupers at the Ward county poor farm. While on such visit the defendant was acting as an overseer of the poor, under the provisions of article 1 of chapter 24, Rev. Codes 1905, relating to such overseers. As such he was entitled to a *per diem* of $2, provided for in § 1868, Rev. Codes 1905. He was caring for the poor and seeking to lodge them, the same as if he had gone to a farmer or other person in his own county for the purpose, though even then there is some question as to whether the act was legal under § 1884, Rev. Codes 1905, which prohibits the sending of paupers out of the county. He was certainly not acting as a commissioner under § 1871, Rev. Codes 1905. He was not, in short, negotiating for the purchase of a poor farm, or for the erection of a building upon such poor farm within the county.

Nor did the court err in regard to the charges for purchasing and distributing the seed grain and collecting therefor. It may be that it would have been well for the legislature to have provided for compensation in such cases, and to have made the collection of the liens a special duty of the commissioners. It does not seem, however, to have done so. The seed lien statute, indeed (chap. 210, Laws 1909), seems to limit the duties of the commissioners to the issue and sale of bonds and warrants, the purchase and sale of seed grain and feed, and the examination and adjustment of applications for grain. It is true that § 2401, Rev. Codes 1905, as amended by chap. 118, Laws of 1911, gives to them the general superintendency of the fiscal affairs of the county. This general superintendency, however, can hardly be held to involve the right to perform, or at any rate the right to charge for, services which would more properly belong to the auditor, the treasurer, the state's attorney, and the sheriff. Objection is also taken to the instruction that "if by a fair preponderance of the evidence the state has proved that defendant has charged and collected illegal fees for services performed in his office, then the burden of proof shifts to the de-

fendant, and is upon him to prove that in charging and collecting such fees that said defendant acted honestly and under the belief that he had the legal right to charge and collect the fees in question."

Counsel contends that it devolved upon the state to introduce evidence to show that the charge and collection was made knowingly and intentionally or corruptly, and that even then the burden of proof did not shift to the defendant, but the burden merely of the evidence or of proceeding. Even if we concede that ignorance of the law would be an excuse, and that the instruction was technically erroneous, and by its terminology confused the burden of proof with the duty of proceeding, we can see no prejudice arising therefrom.

The judgment of the District Court is affirmed.

Goss, J., concurring. The majority opinion is somewhat apologetical as to the decision in State v. Richardson, 16 N. D. 1, 109 N. W. 1026. That holding is sound and in line with the overwhelming weight of authority. The statute, § 2613, Rev. Codes 1905, upon which the commissioners must base any *per diem* charge in going to and from their board meetings, is there construed, resulting in the only reasonable holding that could have been made, and heed have been given to the language of the statute, discriminating between duties in office and travel in attendance on board meetings. Sec. 2613 reads: "County commissioners shall each be allowed for the time they are necessarily employed in the duties of their office the sum of $4 per day and 5 cents per mile for the distance actually travelled in attending the meetings of the board, and when engaged in other official duties." By chap. 119, Laws 1911, the *per diem* is increased to $5 the statute otherwise remaining unchanged. It is noticeable that the statute allows a *per diem* charge while performing duties in office, and an allowance for traveling in attending board meetings. The right of the commissioner to charge *per diem* while *en route* to attend the official meetings of the board is dependent upon whether a commissioner, while so *en route,* is performing official duties. Manifestly he is not. His commissioner duties begin with the convening of the board, and continue so long as the board is in session, and no longer. Miller v. Smith, 7 Idaho, 204, 61 Pac. 824; Rankin v. Jauman, 4

Idaho, 394, 39 Pac. 1111, and Hays v. Simmons, 6 Idaho, 651, 59 Pac. 182. The fact that he is paid a *per diem* "when engaged in other official duties" cannot authorize a charge as for the performance of official duties in merely traveling to attend an official meeting of the board, when no official duties are actually performed. Counsel contend that he was under a duty to attend, which made the time consumed *en route* devoted to performance of official duty, and for which he could charge a *per diem*. Any so-called duty to attend was a mere personal responsibility owing the general public, and not a duty of office. It is similar to the duty of a citizen to qualify after election to office. It is in no sense an official duty. While the legislature, as stated in the majority opinion, have seen fit to increase the salary, but otherwise leave the law relative to compensation unchanged, and this, after the decision of State v. Richardson, would be a strong reason for adhering to the construction of the statute there given, it seems that the statute *is plain and susceptible of only the one construction* given in State v. Richardson.

That this is a civil action or proceeding is settled by decisions of this court in Myrick v. McCabe, 5 N. D. 422, 67 N. W. 143; Wishek v. Becker, 10 N. D. 63, 84 N. W. 590; State v. Richardson, 16 N. D. 1, 109 N. W. 1026; and Territory v. Sanches, 14 N. M. 493, 94 Pac. 954, and note to same case in 20 Ann. Cas. 109, beginning on page 112, showing such to be the rule in all states except California and possibly Georgia.

The evidence discloses a charge made and fees obtained from the county for attendance by the defendant at a state meeting of county commissioners at Fargo, and there is evidence that such charges were made and fees were received on the advice of the state's attorney that the same was a legal charge against the county. The charge was clearly illegal, and the jury was so instructed, but as the jury could have found the charge was made under the advice of the legal adviser of the board, the question of defendant's intent was properly left to the jury by the instructions.

As to the right of the defendant to fees or for the charge made for receiving applications for seed grain, which is explained to have really been made for time spent in purchasing seed for the county and

distributing it by orders to the needy, the better rule is against the legality of a charge therefor. If the board of county commissioners, as the fiscal, superintending, and administrative board of the county, desires such work done, it should authorize the proper officer, or engage an agent or employee, to do the same, or else, if done by one of their number, make or allow no charge for such services rendered or time spent. When a county commissioner is not acting with the board and as a member thereof he acts as an individual, or, if in behalf of the county, as an agent for the county. Public policy condemns employment by the board of their individual members as county agents, or agents of the board, as to do so is to mingle private interests of the individual commissioner with the performance of his duties in office. They may be presented an inducement to so act officially as to create or perpetuate employment for the individual commissioner, and official duties become apportioned as private jobs. When the point is reached that a member of a board has a private interest in the performance of the board's official business, that moment that individual is disqualified to, with propriety, act officially. Miller v. Smith, 7 Idaho, 204, 61 Pac. 824. And for the same reason defendant had no right to make a charge and collect fees for his services in making collection of seed liens or pursuing the county property, as, under the statute (chap. 210, Laws 1909), the county is the owner and has title to and right of possession of the crop sown, raised, and harvested, for which the county has furnished the seed. The court properly instructed the jury on this question.

The record discloses that at the various meetings of the county board, from and including the 15th day of April, 1911, up to and including the 11th day of September, 1911, defendant charged, collected, and received *per diems* for one day in coming to attend the board, and one day returning from the board before and after its adjournment,—in all for eight instances, a charge of fifteen days or $75 was illegally made, allowed, and collected. On September 25, 1911, the state's attorney filed a written opinion with the board, calling their attention to the fact that it was against the law to make or allow these charges, and requesting that the individual members of the board make restitution to the county of such illegal fees, and the opinion in State

v. Richardson, supra, was brought to its attention, ending further allowance of bills of this kind. But the record does not disclose that the county was reimbursed by this defendant.

The evidence also discloses a considerable amount paid for time spent on inspecting roads and highways. The evidence does not disclose whether this board acted jointly as in viewing proposed highways petitioned for, or bridges proposed to be built, or whether the defendant assumed to act as an agent of the board in the instances so charged for. Chap. 19, Political Code of 1905, enumerates the instances in which the board is required to act as a body in such matters, and when so acting they are performing duties, and may charge *per diem* and mileage therefor. Perhaps it has developed into a custom in this state for individual members of the board to act as agents of the board in instances such as are charged for here, but in so doing the commissioner is, instead, performing the duties of county surveyor (§§ 1375–1377), or road supervisor (§§ 1386–1404), or overseer of highways (§ 1410), and not a duty enjoined upon the commissioner.

The authorities are in accord in holding that the making of what is known to be an illegal charge against a county, and the reception of money therefor by a county official, constitute ground for his removal. There is some divergence of opinion as to whether ignorance of the law will excuse the public officer in making a charge and accepting illegal fees under a good-faith belief of right to do so. More or less difference exists in the wording of the various statutes defining grounds for removal by civil action. Where knowledge of the law is conclusively imputed, and the officer cannot be heard to plead ignorance as a justification for the collection of illegal fees, an occasional hardship may be worked, although seldom, as it is a matter of common knowledge that in practice the court or jury tempers justice with mercy in their findings, and hesitates to exact the letter of the bond in the absence of a wrongful or dishonest intent. On the other hand, if ignorance of the law be an excuse, the result is, as is aptly said in People v. O'Brien, 96 Cal. 171, 31 Pac. 45, and in State ex rel. Wynne v. Examining & Trial Board, 43 Mont. 389, 117 Pac. 77, Ann. Cas. 1912C, 143, "The denser the ignorance, the greater would be the exemption from liability;" and that the rule should be: "The receiving of the il-

27 N. D.—35.

legal fees is the gist of the wrong under the statute; and when such fees are deliberately accepted the law is violated." See also note to last-mentioned case, reported in Ann. Cas. 1912C, 143–147. In the instant case the *per diem* charges were made after the decision of State v. Richardson, 16 N. D. 1, 109 N. W. 1026, which case came from a county adjoining Williams. The law was there construed and declared. It is hard to believe that this whole board of commissioners was ignorant of this interpretation of the statute fixing their compensation. The following from Miller v. Smith, 7 Idaho, 204, 61 Pac. 824–827, applies: "If ignorance of the law will excuse such flagrant violations of the law as are shown in this case, the people are at the mercy of ignorant and corrupt officials, and the plea of every dishonest or corrupt official would be ignorance of the law. Officers must be judged by their acts, and not by their plea of ignorance of the plain provisions of the law after its repeated violations which result in their pecuniary or other advantage. . . . The time has evidently come in this state when county commissioners must know their duties and do them." See also annotations in 4 L.R.A. 360; State ex rel. Jackson v. Wilcox, 78 Kan. 597, 19 L.R.A.(N.S.) 224, 130 Am. St. Rep. 385, 97 Pac. 372, and State ex rel. Thompson v. Donahue, 91 Neb. 311, 135 N. W. 1030, and extended note to the same case in Ann. Cas. 1913D, 18–32.

The judgment appealed from should be affirmed.