[Civ. No. 5426.   Second Appellate District, Division Two.—January 21, 1927.]

## MARK ROSE, Petitioner, v. SUPERIOR COURT OF IMPERIAL COUNTY et al., Respondents.

[1] Prohibition—Removal of Public Officers—Section 772, Penal Code—Pleading—Insufficient Facts—Jurisdiction.—The writ of prohibition is the proper remedy where the accusation under section 772 of the Penal Code does not state facts sufficient to constitute a cause for removal of a public officer, or confer upon the superior court the jurisdiction to proceed with the accusation.

[2] Id.—Functions of Writ Preventive not Corrective.—The function of the writ of prohibition is preventive and not corrective.

[3] Id.—Relief Appropriate to Writ of Review not Available—Interlocutory Orders.—Relief appropriate to the writ of review cannot be granted in a proceeding for a writ of prohibition, where it is asked for by an individual respondent, and not the respondent court, and the order sought to be reviewed is an intermediate or interlocutory order which is not final in its nature.

[4] Public Officers — Removal — Section 772, Penal Code — Order Striking Portions of Accusation—Appeal—Certiorari.—An appeal does not lie from an order striking portions of the accusation in a proceeding under section 772 of the Penal Code to

2.   See 21 Cal. Jur. 580; 22 R. C. L. 3.

remove a public officer, as such order is intermediate in its nature and might be reviewed, if in excess of the court's jurisdiction, by a writ of review at the appropriate time.

[5] ID.—ISSUES—PLEADING—DEMURRERS—MOTION TO STRIKE.—In a proceeding for the removal of a public officer under section 772 of the Penal Code, it is proper to raise the issues of law by a demurrer to or motion to strike parts of the accusation.

[6] ID.—GROUNDS FOR REMOVAL—COLLECTION OF ILLEGAL FEES—CONSTRUCTION OF PENAL CODE.—"Charging and collecting illegal fees for services rendered or to be rendered in his office," stated in section 772 of the Penal Code as ground for removal of a public officer, refers to overcharges collected from the political subdivision of which he is an official as well as to the collection of fees from third parties.

[7] IRRIGATION DISTRICTS—REMOVAL OF DIRECTOR—PROCEEDING UNDER SECTION 772, PENAL CODE — ISSUES — PROHIBITION.— Whether the salary of a director of an irrigation district under section 57 of the California Irrigation District Act (Stats. 1897, p. 254) is in lieu of mileage, as well as per diems, need not be determined in a proceeding to prohibit the trial of such officer under section 772 of the Penal Code for collecting money on false representations that it was for mileage and for collecting compensation in excess of such salary.

[8] PUBLIC OFFICERS—COLLECTION OF ILLEGAL FEES—STATUTORY CONSTRUCTION.—The word "fees," as used in section 772 of the Penal Code, is not limited to those fees which may be collected by a public official for services rendered by him to the public, the purpose of that section being to protect the public from improper or illegal charges by their officials.

[9] STATUTORY CONSTRUCTION — OBJECT AND PURPOSE OF STATUTE — WRONGS SOUGHT TO BE REMEDIED.—The wrong sought to be curbed is an important element entering into the proper construction of a statute.

[10] IRRIGATION DISTRICTS—IMPROPER CHARGES FOR SERVICES—DIRECTORS—COLLECTION OF ILLEGAL FEES—STATUTORY CONSTRUCTION.— Improper charges by a director of an irrigation district for mileage, expenses of lobbying for the passage of a statute, political propaganda, etc., and for compensation in addition to salary, to which he was not entitled, constitute charges and collections of illegal fees for services rendered in his office, within the meaning of section 772 of the Penal Code.

[11] ID.—NATURE OF OVERCHARGES—REMOVAL OF DIRECTOR—JURISDICTION.—Under section 772 of the Penal Code, any illegal over-

9.   See 23 Cal. Jur. 764; 25 R. C. L. 1015.

charges by a director of an irrigation district constitutes charging and collecting of illegal fees for services rendered, so as to give the superior court jurisdiction to remove him from office, although collected from the public by passing through the channels of the taxing power.

[12] ID.—PUBLIC OFFICERS—REMOVAL—JURISDICTION — CONSTRUCTION OF CODE.—Officers of an irrigation district are public officers within the contemplation of section 18, article IV of the constitution, and may be removed by the superior court under section 772 of the Penal Code, as against the contention that they are state officers and that such districts are not strictly political subdivisions nor strictly public corporations, since the word "district" as used in section 889 of the Penal Code, which must be construed with section 772, is descriptive of a geographical part of the state.

[13] STATUTORY CONSTRUCTION—PROVISIONS RELATING TO SAME SUBJECT—RULE OF CONSTRUCTION.—Two statutory provisions relating to the same subject matter must, if possible, be construed so as to maintain the integrity of both.

[14] IRRIGATION DISTRICTS — REMOVAL OF OFFICERS — WILFUL VIOLATION OF EXPRESS DUTY—STATUTORY CONSTRUCTION.—Section 73 of the California Irrigation District Act, which provides for the removal of officers of irrigation districts for wilful violation of any express duty, is not exclusive in its nature and does not preclude removal for misconduct or misfeasance and nonfeasance in office, under sections 758 and 772 of the Penal Code, such remedies being for the protection of the public and are cumulative and separate.

---

(1) 32 Cyc., p. 605, n. 39.    (2) 32 Cyc., p. 603, n. 27.    (3) 32 Cyc., p. 630, n. 6 New.    (4) 29 Cyc., p. 1408, n. 15.    (5) 29 Cyc., p. 1407, n. 12.    (6) 29 Cyc., p. 1406, n. 5.    (7) 40 Cyc., p. 821, n. 18 New.    (8) 29 Cyc., p. 1406, n. 5.    (9) 36 Cyc., p. 1111, n. 59.    (10) 29 Cyc., p. 1406, n. 5.    (11) 29 Cyc., p. 1406, n. 5, p. 1408, n. 14. (12) 40 Cyc., p. 820, n. 14.    (13, 14) 36 Cyc., p. 1147, n. 28; 40 Cyc., p. 820, n. 14.

APPLICATION for a Writ of Prohibition to prevent the Superior Court of Imperial County from further proceeding in an action for removal of a director of an irrigation district.    Writ denied.

The facts are stated in the opinion of the court.

---

13.   See 23 Cal. Jur. 786; 25 R. C. L. 1061.

Chas. L. Childers, A. C. Finney and D. B. Roberts for Petitioner.

Harry W. Horton and Kendall B. Perkins for Respondent.

THOMPSON, J.—This proceeding is brought for the purpose of prohibiting the Superior Court from proceeding with the trial of an accusation against Mark Rose as one of the directors of the Imperial Irrigation District, and for his removal from such office as such director. The accusation in effect alleges that George Herrick Davis is a resident, qualified elector and voter and taxpayer within the district; that Mark Rose was elected a director of the district in February, 1921; that Mark Rose has not nor has any person been elected as his successor and that though an election was purported to have been held in February, 1925, that by a judicial determination the purported election was held void; that therefore Rose continues to hold by reason of the election of 1921; that since the election in 1921 Rose has "knowingly, willfully, corruptly, wrongfully and intentionally" violated the express duty of his office in the following particulars:

1st. That Mark Rose as such director approved and caused the expenditure, by warrants, of large sums of money for illegal and improper purposes (all of which are set out in detail) and failed to prevent the payment thereof, having at the time ability so to do.

2d. That Mark Rose as such director incurred indebtedness on behalf of the district, illegally and unlawfully and for purposes in excess of the provisions of the California Irrigation District Act and for purposes for which the district could not expend its funds; and that he failed to prevent the incurring of the indebtedness, he having at the time the ability to prevent. The alleged improper expenditures are also set out in detail.

3d. That Rose as such director did wilfully, unlawfully, corruptly, and intentionally pay and cause to be paid to himself $4,967.74, which he claimed was to cover traveling and other expenses, laid out by him in lobbying for the passage of an act known as the "Swing-Johnson bill"; but that in truth and in fact a large portion thereof was not

incurred or paid out by Rose, but was appropriated to his own use and benefit; and that Rose also had paid to himself $1,500 as and for traveling expenses to be later accounted for, for which he has at all times refused to account; and that all of said payments are in addition to and in excess of the salary allowed by the act.

4th. That Rose as such director has charged and collected mileage at the rate of fifteen cents per mile for attending meetings of the board of directors.

5th. That Rose as such director also caused to be paid to himself in varying amounts the sum of $2,809.56 for mileage and other expenses, which mileage charges were false and fraudulent, and Rose converted the sums so collected to his own personal use and benefit.

· 6th. That on December 7, 1923, Rose demanded and caused to be paid to himself the sum of $1,260 as and for extra compensation and in addition to the salary allowed by law.

7th. That, although formal demand was made in and since March, 1925, for an accounting and that the board recover the expenditures alleged to have been improperly paid out, no account has been rendered and no action taken to recover the expenditures.

8th. That subsequent to a permanent injunction issued by the Superior Court restraining Rose and his codirectors from expending any sums in behalf of any legislation pending in the Congress of the United States, Rose, for the sole purpose of evading the injunction, caused the salaries and compensation of certain employees to be raised; collected from the employees the difference and continued to spend the same for the prohibited purposes; and employed others ostensibly to work for the district, but in fact to work for and on behalf of the legislation.

It is unnecessary to attempt to enumerate the various items expended further than to say that other than those paid to the petitioner and defendant, they are all alleged to have been in one way or another incurred or expended in behalf of pending legislation, either for publicity or in some way connected with political propaganda.

The defendant demurred, generally and specifically, to the accusation and moved to strike certain portions thereof. The demurrer was overruled, but the motion was granted

in part. The court struck out practically all of the items of expenditures for propaganda work as recited above.

Petitioner takes the position that the accusation does not allege facts sufficient to constitute a cause for removal under section 772 of the Penal Code or section 73 of an act known as the "California Irrigation District Act" (Stats. 1897, p. 254), Deering's General Laws, 1923, page 1425, and, especially, that section 772 of the Penal Code does not confer on the court jurisdiction to remove a director of an irrigation district.

The respondent George Herrick Davis complains of the action of the respondent Court in striking out portions of the accusation and in an affirmative answer asks that this court advise the trial court of the law applicable to the trial of said action. He especially urges that under section 772, neither a demurrer nor a motion to strike is contemplated and that the order striking portions of the complaint should be declared ineffective, and the trial be permitted to proceed, under the original allegations and such denials as may be interposed.

[1] It being conceded and established by a long line of decisions that the writ of prohibition is the proper remedy where the accusation does not state facts sufficient to constitute a cause for removal or confer upon the Superior Court the jurisdiction to proceed with the accusation, the first question necessary for us to consider is whether or not in this proceeding we should review the action of the respondent Court in striking out portions of the accusation. [2] It must be borne in mind that the function of the writ of prohibition is preventive and not corrective. (*Traffic Truck Sales Co.* v. *Justices' Court*, 192 Cal. 377 [220 Pac. 306]; *Havemeyer* v. *Superior Court*, 84 Cal. 327 [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121].) And while it is true in the cases cited by respondent that upon application for the prohibitive writ the court granted relief in keeping with the record and law of the case as therein developed, but appropriate to the writ of review, yet that relief was granted at the instance of the petitioner when the particular thing complained of could not be reached by prohibition. Examples of this rule are found in *Van Hoosear* v. *Railroad Com.*, 189 Cal. 288 [207 Pac. 903], *Traffic*

*Truck Sales* v. *Justice's Court,* 192 Cal. 377 [220 Pac. 306], and *Finn* v. *Butler,* 195 Cal. 759 [235 Pac. 992].

[3] In this case we find two fatal differences; first, that the individual respondent, and not the respondent Court, asks for the relief, and second, the order sought to be reviewed is an intermediate or interlocutory order which is not final in its nature. [4] An appeal from the order does not lie on account of the fact that it is intermediate in its nature and not made an appealable order (*Swain* v. *Burnette,* 76 Cal. 299 [18 Pac. 394], and *Cleland* v. *Walbridge,* 78 Cal. 358 [20 Pac. 730]), and which, even though an appeal does not lie from the final judgment, might be reviewed, if in excess of the court's jurisdiction, by a writ of review at the appropriate time. (*Dabney* v. *Wilhelm,* 190 Cal. 340 [212 Pac. 203].) We do not believe that it is in keeping with the rule announced by respondent to adopt such an innovation, particularly where, as here, the court was apparently acting within its jurisdiction. [5] It has been the practice to raise the issues of law by a demurrer or motion to strike and we see nothing improper in this method of confining and defining the issues. (See *Crossman* v. *Kenniston,* 97 Cal. 379 [32 Pac. 448] ; *Crossman* v. *Lescher,* 97 Cal. 383; *In re Curtis,* 108 Cal. 662 [41 Pac. 793].)

For the purposes of this hearing, therefore, we dispose of the charges herein designated as 1st, 2d, 8th, and a part of the 7th, leaving for consideration the 3d, 4th, 5th, and 6th and that part of the 7th wherein it is alleged that no account has been rendered.

[6] Petitioner's contention that "charging and collecting illegal fees for services rendered or to be rendered in his office" refers not to overcharges collected from the political subdivision of which he is an official, but only to the collection of fees from third parties, cannot be sustained. [7] Nor is it necessary in our opinion to determine whether or not the salary provided for by section 57 of the California Irrigation District Act in an irrigation district containing five hundred thousand acres or more, which it is alleged the Imperial Irrigation District does contain, is in lieu of mileage as well as the per diems, for the reason that the accusation herein charges the collection of moneys on the representation that it was for mileage and that it was not in fact for mileage. It also charges the collection of com-

pensation over and above the salary therein allowed, and to which petitioner was not entitled. The allegations, therefore, do not relate solely to mileage, but they do charge that Rose collected from the district moneys to which he was not in any way entitled and that the said moneys were by him appropriated to his own use. **[8]** Petitioner argues seriously and refers to many sections of the code wherein the word "fees" is used to describe fees which may be collected by a public official for services rendered by that official to the public, but we do not think that it was intended that the word "fees" as used in section 772 of the Penal Code should be limited by any such definition. At least one of the purposes of the section is to assure the public that their officials shall not be permitted to mulct them by improper or illegal charges. **[9]** And as was pointed out in *People* v. *Lips,* 59 Cal. App. 381 [211 Pac. 22], the wrong sought to be curbed is an important element entering into the proper construction of a statute.

**[10]** Petitioner has cited two cases from Idaho, *Hudson* v. *Bertsch,* 38 Idaho, 52 [220 Pac. 109], and *Daniels* v. *Wrighton,* 38 Idaho, 55 [220 Pac. 110], apparently growing out of one situation, which seem to hold that items of actual expense should not be classified as fees. It should be noted, however, that the items in the first case were included by mistake without suggestion of a wilful attempt to overcharge, and in the other case $12 was collected as the actual expense of a trip to take possession of a gambling machine, and that for some reason not clearly shown the prosecution was dropped. In neither of these cases is there suggested a wilful attempt to overcharge or burden the public. They are therefore to be distinguished from the allegations here made. There are direct allegations in the petition that the moneys claimed and collected by Rose were not to cover any proper expenses laid out by him, but that they were so named only for the purpose of giving them the appearance of regularity. It cannot be argued from the allegations that the claims were for reimbursement. We think the correct rule is enunciated in *Rankin* v. *Jauman,* 4 Idaho, 394 [39 Pac. 1111]; *State* v. *Richardson,* 16 N. D. 1 [109 N. W. 1026], and *State* v. *Borstad,* 27 N. D. 533 [Ann. Cas. 1916D, 1014, 147 N. W. 380], which were all cases involving the collection of per diems and mileage from the political subdivisions of

which the accused was an officer.   In *State* v. *Borstad, supra,* the argument in this particular was dismissed with this language: "We find no merit in the contention that the charge for the attendance at the Association of County Commissioners at Fargo, which it is conceded was illegal, was not 'a charge and collection of illegal fees for services *in his office*' for which the defendant could be removed.   It is sufficient to say that it was presented and allowed as a fee of the office."

[11]   It cannot be persuasively argued that the legislature intended to make the collection of fees from the public an offense for which the official might be removed and at the same time say that moneys collected illegally from the public, by passing through the channels of the taxing power, should not.   It is the wrong of burdening the public with charges with which they should not be burdened that constitutes the offense.   An examination of the civil action, *County of Los Angeles* v. *Cline,* 37 Cal. App. 607 [174 Pac. 73], indicates further that the rule should be that any illegal overcharges should be held to be the "charging and collecting" of illegal fees for services rendered, within the contemplation of section 772 of the Penal Code.   It is therefore within the jurisdiction of the court in so far as this question is concerned for it to proceed to hear the charges herein designated as 3d, 4th, 5th, 6th, and that part of 7th not stricken out.

[12]   Petitioner's next contention is that a director of an irrigation district is a state officer and not a district officer, and being such, the Superior Court has no jurisdiction to entertain the accusation under section 772 of the Penal Code, which provision reads as follows, to wit: "When an accusation in writing, verified by the oath of any person, is presented to a superior court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered, or to be rendered, in his office, or has refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the accusation was presented, and on that day, or some subsequent day not more than twenty days from that on which the accusation was presented, must proceed to hear, in a summary manner, the accusation, and evidence offered in support of the same,

and the answer and evidence offered by the party accused; and if, on such hearing, it appears that the charge is sustained, the court must enter a decree that the party accused be deprived of his office, and must enter a judgment for five hundred dollars in favor of the informer, and such costs as are allowed in civil cases.'' He relies upon *Kilburn* v. *Law,* 111 Cal. 237 [43 Pac. 615], wherein it was held that the superior court had no jurisdiction to entertain an accusation against the bank commissioners, and authorities holding that irrigation districts are not strictly political subdivisions nor strictly public corporations, but government mandatories or agencies vested with limited powers to accomplish limited and specific work. It is apparent, we think, that an analogy cannot be drawn between bank commissioners whose activities and powers are state wide and directors of an irrigation district confined to a particular district. Nor do we think it is significant that they are not strictly political subdivisions. The directors are elected by the qualified electors and voters of the irrigation district and are responsible to, and answerable to, the voters of that district for a proper discharge of their official duties. It would be a strained and wholly unjustified construction to say that such officials should not be answerable to the voters of the district the same as officers of a municipality or other political subdivision. The clear legislative intent was to protect the public against derelict officials performing their duties within the county in which the superior court sits.

Petitioner attaches much importance to the statement found in the opinion in *In re Madera Irr. Dist.,* 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675], that ''the district officers thus become public officers of the state'' and argues that this is the equivalent of saying that they are state-wide officers. He overlooks the words ''district officers'' and also the principles therein enunciated as reasons for holding the act to be constitutional, to wit: That the state, operating through the legislature, has a right to delegate part of its authority to a district to attain the general welfare, but which may in fact, so far as legislative matters go, only affect a particular district. That as the holders of this delegated authority these officers of a district do represent the legislative authority of the state. We think this is made clear by a further quotation from that case as

follows: "With greater propriety has it been left to the legislature to provide the mode of organization and the powers 'to be exercised by different species of municipal corporations. Such corporations are but the agents or representatives of the state in the particular locality in which they exist. They are organized for the purpose of carrying out the purposes of the legislature in its desire to provide for the general welfare of the state, and in the accomplishment of which legislative convenience or constitutional requirements have made them essential. Although in this state the legislature is required to provide such agencies under general laws, it is authorized, under its general power of legislation, to invest such corporations, when created, with the same powers which, without such restriction, it could itself have exercised; and in providing for such organizations it need confer upon them only such powers as, in its judgment, are proper to be exercised by them in the discharge of the particular functions of government which may be conferred upon them. Being the representatives of the legislature in the various localities of the state, the requirements for organization, as well as the powers to be exercised, vary with the character of the purpose for which they may be created. Hence the general laws which the legislature may enact for the organization of public corporations may be as numerous as the objects for which such corporations may be created. For each of these objects the law is the same, but there would be a manifest impropriety in requiring that the organization of a levee district or an irrigation district should be conducted in the same manner as the organization of a corporation for the management of a public park or the control of the school department. Whether the districts to which such general laws are applicable, or in which the people thereof may avail themselves of the privilege conferred, be many or few, is immaterial. Even if there be but a single district to which the law is applicable at the time of its enactment, the legislature would be justified, under its legislative power, to pass general laws in making such provision for that district. Whenever a special district of the state requires special legislation therefor, it is competent for the legislature, by general law, to authorize the organization of such district into a public corporation, with such powers of government as it may choose to confer upon it. It is not

necessary that such public corporation should be vested with all government powers, but the legislature may clothe it with such as, in its judgment, are proper to be exercised within and for the benefit of such district." Therefore, in using the words "public officers of the state," the court intended to convey the meaning that they were public officials, and in that sense every public official, whether of a municipality, county, district or state, be his duties of great or minor importance, is a "public officer of the state." This is but another way of expressing what was also said by the court in that case: "Its [the district] officers are public officers, chosen by the electors of the district, and invested with public duties." Section 889 of the Penal Code must be construed with section 772 of the Penal Code, but when the word "district" is used in section 889 of the Penal Code it is descriptive of a geographical part of the state and it may be a school district, an irrigation district or any other district to which has been entrusted the discharge of certain public duties for that particular district.

*In re Madera Irr. Dist., supra,* is authority, however, for the proposition that officers of the irrigation district are public officers or officials. And as such we are constrained to hold to be within the contemplation of section 18, article IV, of the constitution, designating the legislature as the body to provide ways and means for the removal of those officers not liable to impeachment as that word is ordinarily understood. They are charged with the discharge of public duties for the general welfare of a particular district. Or as stated in *Coulter* v. *Pool,* 187 Cal. 183 [201 Pac. 120], agents for a particular political unit exercising some governmental function.

[13, 14] Petitioner also questions the jurisdiction of the court on the ground that section 73 of the California Irrigation District Act provides the only offenses for which the directors of an irrigation district may be removed, and being exclusive in its nature, section 772 of the Penal Code cannot apply. The material portion of section 73 of the California Irrigation District Act reads: "for any wilful violation of any express duty herein provided for, on the part of any officer herein named, he shall be liable upon his official bond, and be subject to removal from office, by proceedings brought in the superior court of the county wherein the office of the

board of directors of the district is located, by any assessment payer of the district; . . . '' It will be noted that section 73 uses the words ''wilful violation of any express duty herein provided for.'' We see nothing herein to indicate that the ''wilful violation of any express duty'' provided for in the act itself is to be the only offense for which the official should be removed. It is a familiar rule of statutory construction that where there are two provisions relating to the same subject matter they must, if possible, be construed so as to maintain the integrity of both. (*Bateman* v. *Colgan,* 111 Cal. 580 [44 Pac. 238]; *People* v. *Superior Court,* 64 Cal. App. 770 [222 Pac. 864].) The only construction which does not do violence to this rule is that both remedies were intended to be authorized and were authorized for the protection of the public and that it was intended that they should be cumulative and separate, section 73 of the California Irrigation District Act providing for wilful violation of any express duty, set forth in the act, and sections 772 and 758 of the Penal Code providing the general remedies for misconduct or misfeasance and nonfeasance in office.

The peremptory writ is denied.

Works, P. J., concurred.

CRAIG, J., Dissenting.—I dissent, mainly because in my opinion, officers of an irrigation district are not subject to a proceeding of this nature.

A petition for a rehearing of this cause was denied by the district court of appeal on February 19, 1927.